The court [absente Sewall, J.] afterwards delivered their opinions seriatim.
Parker, J.
The motion for a new trial is founded on a supposition that the offence committed does not amount to larceny, because the defendant was employed to carry the goods, and instead of breaking a package, and taking out a part, which it is admitted *512 would have been larceny, he took the whole package. And it has been argued by his counsel that, according to the English decisions, it does not amount to a larceny, because there was no original felonious taking. This seems a very subtile distinction, which makes the fraudulent taking of the whole a less crime than the taking of a part. The only reason for the distinction, perhaps, is, that the original taking is not considered as felonious ; for there is certainly no moral difference.
I am of opinion that, although no particular package was broken, the taking one of several parcels or bundles is a severance of the property committed to his custody, without the consent of the owner. The defendant was not a common carrier. He committed the act clandestinely and fraudulently, and his intent must have been felonious. I think he cannot set up this nice distinction, to protect himself from the consequences of a very criminal act; and that a new trial ought not. to be granted.
Sedgwick, J.
This case presents to our consideration two questions. 1. Were the goods, a part of which are charged in the indictment to have been stolen by the defendant, so delivered to him, that he is, in relation to them, to be considered in the character of a carrier, or ought he to be considered, in that relation, as merely the servant of Willis 1
2. Supposing the defendant is to be considered as a carrier, and supposing, also, that the goods were fraudulently taken by him, before the load was delivered at Bridge’s, was such taking theft ?
[ * 584 ] * As to the first of these questions, it is not perhaps very important to enter into a discussion of, or to decide it. At the trial, I inclined very strongly to the opinion that Brown was to be considered merely as a servant, and not as a carrier. And I will now only add that, from the arguments at the bar, I have not perceived any sufficient reason for inclining to a different opinion.
As to the second question above stated, the principle of law, that, if goods delivered to a carrier, to he transported to a certain place, are by him converted to his own use, anima furandi, before they arrive at the place of destination, such conversion is not theft, (2) has been too long established, and is too well known and settled, to be called in question. I admit that it must be now holden to be law, although, to my apprehension, it is a conclusion resulting from artificial reasoning merely; for such a conversion is as much an invasion of the right of property, and of greater moral turpitude, than if the original *513 possession had been obtained without the consent of the owner. It is more flagitious, because it is accompanied by a violation of confidence. Every indictment for larceny, however, must charge a felonious taking, which includes a trespass ; and therefore it is said, if there be no trespass in taking, — as there is not where goods are delivered by an owner to a carrier,—there can be no felony in carrying them away ; yet those who have the possession of goods by the delivery of the owner, may be guilty of felony by taking away part thereof, with intent to steal it. (3) This separation of a part is considered as such a determination of the privity of contract, as to constitute it a felonious taking. (4)
(a)
Now, I can conceive no good reason why such taking a part should be considered a larceny, while taking the whole, with the same wicked intention, should have a different construction. Such, however, I am bound to consider as a well-founded distinction, and the defendant is entitled to the benefit of it, if the facts warrant its application in his favor.
* It is true that Hawkins illustrates the rule that [ * 585 ] those who have the possession of goods by the delivery of the owner, may be guilty of felony by taking away a part thereof with intent to steal it, by the instances of a carrier’s opening a package and taking out part of its contents; a weaver who has silk to work, or a miller who has corn to grind, taking out part thereof, with an intent to steal it—instances of a separation, it is said, of apart from a united mass of property. Hence it is attempted to be concluded that if several masses or packages are so delivered, and the whole of one of them taken, with the same intent, it is not theft. But there is nothing in the nature of the thing, or in the words, by which the principle is expressed by Hawkins, on which to ground such a distinction. For surely taking an entire package, being one of several, is at least as heinous an offence, as injurious to the owner, and as much a determination of the privity of contract, as taking part of the same package would have been. And East, after a full consideration of this subject, concludes that, in the case of a carrier, the crime consists in a separation of part of the goods delivered from the rest, with a felonious intent, though no package be broken.
tío far, then, we are bound to go upon authority; and here, I think, we must stop. Was Brown, then, to be considered as a car- *514 tier, does his case come within the rule ? The goods, which were delivered to him by Willis, composed a cart load, consisting of a cask of spirituous liquor, and several packages of dry goods. The goods taken were in one entire package, placed in the middle of the load, and by him fraudulently taken and separated from the rest; and whether before or after the delivery of the other goods to Messrs. Bridge, in whom the general property of them was, was not in evidence; nor is that circumstance, in my opinion, material Whether before or after, the conviction I think was right. (5)
Parsons, C. J.
The counsel for the defendant move for a new trial; and they have argued that he was a carrier, having [ * 586 ] the lawful possession of the goods until the load * was delivered at Sudbury, and that if he took the goods on the route, it was an unlawful conversion, and not a felony, because he did not open the package, and take part of the goods, but took the whole package.
Upon considering this case, I am of opinion, admitting the defendant to have been a common carrier, and thus to have had the lawful possession of the goods, yet all the goods in the wagon were delivered to him as one mass or body, and his taking away one of the packages was a separating a part from the whole, and thus was'determined the supposed privity of contract. For the contract with him was not to carry the several packages of which the load was composed, but to carry the load to Sudbury in the state in which it was delivered to him.
I have thus far considered the defendant as a common carrier, having a special property in, or a lawful possession of, the wagon load. But the defendant was not a common carrier; he was a mere servant to Willis, the carrier, to drive his team to Sudbury. And it would be extremely mischievous to have it understood that every driver of a team, employed by a common carrier, has a special property in the load, so that if he drives elsewhere than he was engaged to drive, and takes the whole load, he will be chargeable for an unlawful conversion only, and not for a felony. A new trial cannot be granted. (b)

 1 H. H. P. C. 504, 505, 506. — 1 Hawk. P. C.c. 33, § 3.—2 East’s C. L. 696, 697,698.

 1 Hawk. P. C. c. 33, § 5.

 2 East’s C. L. 698.

 [East, who is referred to in support of this general position, speaks only of a case where there has been a delivery of something, “ as one entire body or mass,’’ and a separation of a part of it from the rest.—Ed.]

 Kel. 35,81,82,

 [Commonwealth vs. James, 1 Pick. 375. and the authorities cited by the councel for the prisoner.—Ed]