NICHOLS, plaintiff in error, *v.* THE PEOPLE, defendants in error.

The separation and conversion to his own use, by a carrier, without the assent of the owner, of sundry bars of pig iron, part of a larger number which had been delivered to him for transportation and loaded upon his canal boat, is larceny and not embezzlement.

Where the commodity, a part of which is separated by the carrier from the rest, is transferred in commerce by weight, and not by count, the severance is a trespass which determines the privity of contract, and a breaking of bulk equivalent to the opening of a bale or package.

WRIT of error to the Supreme Court.    The plaintiff in error was indicted, in November, 1856, for the larceny of pig iron.    He was tried, at the Erie Oyer and Terminer, in December, 1856, and acquitted, on the ground that the offence was not larceny but embezzlement.    He was immediately indicted for converting and embezzling to his own use, without the assent of the owner, certain pig iron entrusted to him as a carrier, for transportation upon the Erie canal from Albany to Buffalo.

The prisoner pleaded, first, not guilty; second, a previous acquittal of the offence charged; third, the previous acquittal, setting forth the former indictment, and averring that the acts and offences charged in the two indictments were the same, and that the same evidence which would support the one would support the other.    The people took issue on

the second plea and demurred to the third. The demurrer was sustained by the Oyer and Terminer.

The prisoner was tried and convicted, but a bill of exceptions having been signed, he obtained a certificate of probable cause from a justice of the Supreme Court and sued out a writ of *certiorari*, by which the proceedings were removed, before sentence, into the Supreme Court, where, at a general term in the eighth district, it was held that there was no error in the conviction, and the prisoner was, November 14, 1857, sentenced to imprisonment in the state prison for two years and five months.

It appeared from the bill of exceptions that the prisoner, being captain and owner of a canal boat, took on board at Albany thirty-four tons of pig iron, which he agreed with the owner to transport to Buffalo. The iron was in bars, each of which weighed about one hundred pounds. On the passage to Buffalo, the prisoner stopped his boat at Whitesboro' in the night, and then put off from the boat one hundred bars of the iron of the value of $175. There was further evidence on the part of the people, tending to show that this removal of the iron was with a felonious intent. The remainder of the iron was delivered by the prisoner at Buffalo. Upon the closing of the proof on the part of the people, the counsel for the prisoner moved for his discharge on the ground that the evidence proved that the offence was larceny, and not embezzlement as charged in the indictment. The court denied the motion and the prisoner excepted. The same question was raised by exception to the charge.

*William Dorsheimer*, for the plaintiff in error.

*Albert Sawin*, for The People.

PRATT, J. It was conceded, upon the argument in this case, that if the evidence, upon the trial at the Oyer and Terminer, established a case of larceny, the conviction was

wrong. The simple question for our examination, therefore is, whether the separation of a portion of the iron from the whole, and the felonious conversion of it, constituted larceny

At common law it is well settled that if a carrier or other bailee opens a bale or package of goods, or pierces a vessel of wine, and takes away and disposes of part of it, it is larceny, although if he has disposed of all of it, it is a breach of trust merely (*Arch. Cr. Pl.*, 384; *East's Cr. L.*, 697 ); and under this it has been held that taking an entire bale from several would not constitute the offence. (5 *Carr. & Payne*, 533.) Various reasons have been assigned by commentators for this distinction, none of which are entirely satisfactory. It has been said to be "such proof of the original felonious intention that it has always been held to be larceny." (*Kel.* 81, 82.) As suggested in 2 *East's Criminal Law* (*p.* 697 ), if taking a part is evidence of the original felonious intent, no less, surely, would the taking of the whole be. Again, it is said by BLACKSTONE that if a carrier opens a bale or pack of goods, or pierces a vessel of wine, and takes away a part, it is larceny, for here the *animus furandi* is manifest, since he had otherwise no inducement to open the goods. (4 *Black.*, 230.)

But the prevailing principle upon which the distinction is placed is, that the act of breaking the package or bale is an act of trespass in the carrier, by which the privity of contract is determined; and although the principle is said to stand more upon positive law, not now to be questioned, than upon sound reasoning (2 *East's Cr. L.*, 695), yet it seems to be admitted to be the correct principle in all the cases in which the question has been canvassed. (1 *Hale*, 504; 1 *Hawk.*, ch. 33, §§ 5, 7; 3 *Coke Inst.*, 107.)

In the case at bar it is insisted, on the part of the people, that the bailee can commit larceny only where he actually breaks a bale or package; that it is this breaking alone which can determine the privity of contract and render the asportation by the carrier a trespass. But this, I think, is

Nichols *v.* The People.

too narrow a construction of the rule, and one not sustained by the commentators and adjudications. Any separation of a part from the whole would seem to be as much a trespass as the breaking of a package. Indeed, it is the separation that constitutes the trespass. This seemed to be conceded upon the argument in regard to grains and things of that kind, but a distinction was attempted to be drawn between grain and iron in the form of pigs.

But I am unable to perceive the force of the distinction. What the rule might be in the case of articles having, as it were, a separate identity, like barrels of flour, saw logs and the like, it is not necessary to inquire. In this case, the iron was in a condition in which it is transferred in bulk by the hundred pounds or by the ton, and not by count. Although more readily separated by individual count than the kernels of grain, it is not a subject of trade or commerce by count any more than grain is; and a separation of part from the rest would seem to be just as much a trespass as the separation of a portion of a load, in bulk, of corn, apples or potatoes from the whole would be. It is this separation of any article conveyed in bulk, by a carrier, from the whole, which constitutes the distinction between larceny and embezzlement.

In 2 *East's Criminal Law* (*p.* 698) it is said: "The separation of the part of the goods from the rest, with a felonious intent, seems, however, to be material when they are delivered as one entire body or mass, though no case or package be broken, because such an act equally evinces a determination of the privity of the contract." He cites 1 *Rolle's Abridgment* (*p.* 73, § 16), where it was held that "if a man says to a miller who keeps a corn mill, thou hast stolen three pecks of meal, an action lies; for, although the corn was delivered to him to grind, nevertheless, if he steal it, it is felony, being taken from the rest."

So Hawkins (*book* 1, *ch.* 33) says: "Those having possession of goods by the delivery of the party may be guilty of

felony by taking away a part thereof with an intent to steal it, as if a carrier open a pack and take out part of the goods, or a weaver who has received silk to work, or a miller who has corn to grind, take out part with intent to steal it, in which case it may not only be said that such possession of a part, distinct from the whole was gained by wrong and not delivered by the owner, but that it was obtained basely, fraudulently and clandestinely, in hopes to prevent its being discovered at all, or fixed upon any one when discovered." This latter reason, I apprehend, would apply much more forcibly to the separation of a part from the whole when it is in open bulk than where a package is broken open.

In *Rex* v. *Howell* (7 *Carr. & Payne*, 325), the prisoner was employed to land a boat load of staves from a ship, and he landed all but two which he secreted in the bottom of the boat, and one, which he landed, he carried to his mother's house. The court held, in the words of PATTESON, J., that the non-delivery of the two was not larceny, " but the prisoner separating one of the articles from the rest, and taking it to a place different from its destination, was, if he did it with intent to appropriate it to his own use, equivalent to breaking bulk, and therefore would be sufficient to constitute larceny."

The learned judge who read the opinion in the court below suggested that the decision of this case might have been based upon the actual delivery of the staves at the place of destination and a subsequent asportation, which would constitute larceny within all the cases. It is enough that the court in that case did not put their ruling upon any such ground; and I assume, from the remarks of Justice PATTESON, that the stave was taken directly from the boat to the place where it was found, notwithstanding the imperfect statement of the facts would indicate that it was first landed.

In *Commonwealth* v. *Brown* (4 *Mass.*, 580), a wagon load of goods, consisting of several packages, was delivered to be

Nichols *v.* The People.

transported from one place to another, and the prisoner fraudulently took away one of the packages; it was held to be larceny. This was carrying the rule much farther than is necessary in this case, but the court considered that the goods were delivered to the prisoner already loaded, " as one mass or body, and his taking away one package was separating a part from the whole, and thus he determined the supposed privity of contract."

So, in *Commonwealth* v. *James* ( 1 *Pick.*, 375 ), the same court held that where a miller having received barilla to grind, fraudulently retained a part of it, returning a mixture of plaster of paris, it was larceny.

The case of *Rex* v. *Madox* ( 1 *Russ. & Ry.*, 92 ), was cited in the court below as a case in point against the prisoner. In that case the prisoner, who was the master of a vessel, received two hundred and eighty casks of butter to carry in his ship; most of the casks were stowed in the hold and battened down, but some were put upon deck. The master disposed of thirteen of those upon deck upon the voyage. It was held that this was not larceny, although it seemed to be admitted by the court that if the prisoner had broken bulk, by taking the thirteen from those battened down, it would have been larceny. This case, it seems to me, is not in point at all. These casks were delivered to the master by count and not in bulk, and consequently there was clearly no breaking bulk, no taking part from the whole of the mass or bulk delivered, but it was a mere separation of a number of separate articles from the whole number. The casks were clearly what might be deemed separate packages, as they lay upon the deck. But it seemed to be conceded that if the master had taken them from those battened down it would be larceny.

In the case of *Rex* v. *Fletcher and others* ( 4 *Carr. & Payne*, 545 ), the goods were in packages, and were taken out, but the prisoners were acquitted on the ground that it did not appear that the packages had been broken open while in

their possession. If the prisoners had broken open the packages it would have been larceny within all the cases I do not see, therefore, wherein the case has any bearing upon the point in this case.

In *Rex* v. *Pratley* (5 *Carr. & Payne*, 533), the prisoner was employed to carry in his cart three trusses of hay, and he took away one of them, which was found in his possession but not broken up. It was held not larceny. Here there was clearly no breaking bulk. The three trusses were three separate packages, and the conversion of one whole package was held by the court not to be larceny. If the pig iron had been put up in separate boxes, and the prisoner in the case at bar had been indicted for stealing one or more boxes, that case would have been in point.

I have now referred to the principal cases upon the question, and it seems to me quite clear that this was breaking bulk within the meaning of the rule as established by those cases. The separation of a part from the whole bulk or mass was a trespass, determining the supposed privity of contract; and I think our statute for the punishment of embezzlement is based upon this view of the law. It provides " that if any carrier or other person to whom property shall be delivered to be transported for hire shall convert, &c., in the mass, as they were delivered, without breaking the box, trunk, pack or other thing in which they shall be contained, he shall be punished in the same manner as if he had taken, &c., such goods after breaking the trunk, box, pack or other thing containing the same, or after separating any of them from the others." The language of this provision clearly recognizes the separation of a part from the rest as breaking bulk.

This case turns upon a narrow point, and no actual injustice to the prisoner, perhaps, would be done by affirming the judgment below; but our decisions are precedents for future cases, and although this prisoner may go unwhipt of justice in consequence thereof, yet we must propound the

law as we find it, whatever the consequence may be in this particular case.

SELDEN, ROOSEVELT, HARRIS and STRONG, Js., concurred in this opinion. DENIO and COMSTOCK, Js., dissented, the former delivering the following opinion:

DENIO, J. The counsel for the plaintiff in error maintains that, under the statute, a conviction might have been had in this case for larceny, though it should be held that, at common law, the act would have been only breach of contract, or of the defendant's duty as a carrier. (2 *R. S.,* 679, § 62.) The statute declares, in effect, that if a carrier shall take, embezzle or convert goods entrusted to him to carry, though under such circumstances that he could not be convicted of larceny at common law, "he shall, upon conviction, be punished in the same manner as if he had taken, embezzled, converted or secreted such goods, &c., after breaking the trunk," &c. There is some plausibility in the suggestion that the statute abolishes the distinction, so much discussed, in cases where carriers are charged with larceny, and that they may be indicted for that offence whether they break open a package or not, and whether they steal the whole or only a part of the goods delivered to them to carry. The offence is certainly made indictable criminally in either case, and the punishment is the same in both; but I am inclined to think, though with some hesitation, that it is not technically larceny now where it would not have been before the statute, but that a new statutory offence is created, and that the indictment should state the circumstances made necessary by the act to constitute the crime. By section sixty-eight of the same article. the severing of anything from the soil, or from a building, gate or fence, with intent to steal it, which acts would have been mere civil trespass at the common law, are made indictable as larcenies; but there it is declared in terms that the offender "shall be deemed

guilty of larceny in the same manner and in the same degree as if the article so taken had been severed at some previous' and different time." The omission of a similar expression in the section respecting carriers is significant to show that a statutory offence was designed to be created.

The remaining question is, whether the taking from the boat and disposing of the bars of pig iron under the circumstances was larceny at common law ; for if it was, the plaintiff in error ought to have been convicted under the former indictment, and was entitled to an acquittal upon the one upon which he was last tried. According to the argument made in his behalf, the taking and disposing of a part of the property entrusted to a carrier, at the same time, for the same transit, is larceny ; while it is conceded that if the whole had been thus disposed of it would not have been larceny at common law, and could only be punished under the statute referred to. There is some authority for this position. In *Commonwealth* v. *Brown* ( 4 *Mass.*, 580 ), a wagon load of goods, in casks and packages, was delivered to a carrier for transportation. One package, which was on the bottom of the wagon, between a cask of spirits and another package, was purloined by a person whom the carrier had temporarily engaged to drive his team. The driver was convicted of larceny, and the court held the conviction right, affirming the position taken by the counsel for the convict in this case. All the judges, it is true, said that the driver did not stand in the place of the carrier and had no special property in the goods, but they all likewise agreed that it would have been larceny in the carrier if he had committed the act. In *Commonwealth* v. *James* ( 1 *Pick.*, 375 ), the prisoner, who was a miller, had converted a portion of a parcel of barilla sent to him to grind, and had supplied its place with plaster of paris, and the mixture was returned to the owner. There was a conviction for larceny. The court seem to have assumed that the defendant had a special property in the barilla, and was not guilty, except under the

Nichols *v.* The People.

doctrine which subjects a carrier who breaks bulk, &c.   But on the ground that a part had been taken from the mass of the article, they held that the privity of bailment was at an end, and hence that the defendant was properly convicted. The case of *Rex* v. *Howell* (7 *Carr. & Payne*, 325 ), also relied upon on behalf of the plaintiff in error, does not appear to be in point.   I understand that the stave which the learned justice thought the prisoner guilty of stealing had been landed from the boat at the place of delivery.   The bailment was therefore at an end, and there could be no question concerning a separation of this stave from the others during the transit.   I cannot understand all that the judge is reported to have said to the jury, as the case is very loosely reported.

I do not think the rule as laid down in the case in Massachusetts is in accordance with the law as it is understood in England.   The principle is stated by Coke as follows :  " If a bale or pack of merchandize be delivered to carry to one, at a certain place, and he goeth away with the whole pack, this is no felony ;  but if he open the pack and take anything out *animo furandi*, this is larceny ;  likewise if the carrier carry it to the place appointed, and afterwards take the whole pack *animo furandi*, this is larceny also ;  for the delivery had taken effect, and the privity of the bailment is determined."  ( 3 *Inst.*, 107.)   But suppose he take several packs, and during the transit dispose of one and deliver the rest, this would not seem to be in any respect different from the case of taking a single pack ;  and so it has been repeatedly held.   In *Rex* v. *Madox* (1 *Russ. & Ry. C. C.*, 92 ), the captain of a ship disposed of several casks of butter, which formed part of her cargo, for his own benefit, and afterwards pretended to the consignees that he had been obliged to throw them overboard.   This was held not to be larceny.

In *Rex* v. *Fletcher* ( 4 *Carr. & Payne*, 545 ), the prisoners were intrusted with goods in packages to carry.   They did not deliver them, but the goods were afterwards found, out

of the packages, in the possession of a third person, who was included in the indictment as receiver. The trial was before the same judge who presided in *Rex* v. *Howell* (Mr. Justice PATTESON). He directed an acquittal, saying "there is no evidence that the packages were opened while the goods were in the possession of the two persons who are charged as principals; and a prisoner cannot be guilty of larceny unless he break bulk." *Rex* v. *Pratley* (5 *Carr. & Payne*, 533), was a similar case. Three trusses of hay were delivered to the defendant, a cartman, to carry. He took away one of the trusses, which was found in his possession not broken up. Mr. Justice J. PARKE said, "this is no larceny, as the prisoner did not break up the truss," and he directed an acquittal.

These pigs or bars of iron were as distinct and separate as the casks of butter, or the trusses of hay. The act of taking away a portion of them was no more a breaking of bulk than the taking of one or more of a parcel of any articles resembling each other. They were not mixed, and were incapable of being mixed like the barilla, or like corn taken to a mill to grind. I express no judgment upon such cases; but I am of opinion that according to the English authorities, which I think we ought to follow, the plaintiff could not have been convicted of larceny upon the evidence in this case.

The language of the section of the Revised Statutes was supposed, by the prisoner's counsel, to imply that this case was considered by the legislature to be larceny. It seems to me that a careful consideration of it will lead to a contrary conclusion. If the conversion by a carrier of part of a quantity of goods intrusted to him to carry would be larceny without other circumstances, the only case for the legislature to provide for would have been the conversion of the whole. None of the circumlocution would have been needed if the law had been so understood. The section does indeed speak of "separating any of them from the others." This

may refer to things mixed, like the barilla. The pig iron was neither attached together or mixed, and the term separating would not be strictly applicable. They probably lay scattered upon the deck as is usual with such cargo, and taking a portion of the bars would not be a separating of them from the rest, any otherwise than from all the other property on board the boat.

I think the Supreme Court decided correctly in holding that the plaintiff in error could not be convicted except under a special indictment, like the one under which the last trial took place, and that the judgment should be affirmed.

JOHNSON, Ch. J., expressed no opinion.

Judgment reversed and the discharge of the prisoner ordered.