**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Raymond BOURBEAU and Larry James Perry, Defendants and Appellants.**

**Cr. No. 565.**

Supreme Court of North Dakota.

Jan. 27, 1977.

Mervin D. Nordeng, State's Atty., and Joseph A. Turman, Asst. State's Atty., Fargo, for plaintiff and appellee; argued by Joseph A. Turman, Asst. State's Atty., Fargo.

Wayne G. Aarestad and Craig D. Fink, Fargo, for defendants and appellants; argued by Wayne G. Aarestad, Fargo.

ERICKSTAD, Chief Justice.

In this case we are asked to determine whether an amendment of a criminal information following the closing of the State's case was a violation of the defendants' rights under the North Dakota Rules of Criminal Procedure or the Sixth Amendment to the United States Constitution. A separate issue is whether defendants were denied their right to credit for time served when they were sentenced.

Mrs. Lillian Wold, who resides in Fargo, North Dakota, called the Fargo police about 8:00 a. m. on March 18, 1976, and reported her automobile missing. She owned a white 1963 Ford Galaxie four-door, North Dakota license number 177203. Her testimony was that she had used the car until 8:30 p. m. on March 17, and that at 11:00 that evening, she observed it in her parking space, visible from her apartment window.

According to Mr. Jerry Gentz, the assistant manager of the Red Owl store in Oakes, North Dakota, two men whom he later identified as Raymond Bourbeau and Larry James Perry, the defendants in this case, were seated in a " '63 white Ford Fairlane 500 four-door" in the parking lot of the Oakes Red Owl store when he arrived at work at 8:00 a. m. on Thursday, March 18, 1976. Gentz testified that he saw Bourbeau and Perry in Oakes, in the same automobile, about three times between March 18 and March 20, at which time he copied down the license number of the car they were driving, North Dakota 177203, and gave it to his boss to convey to the county sheriff. At trial, he identified photographs of Mrs. Wold's car as the same car in which he had seen the defendants.

Sheriff Walter Raugutt of Dickey County stated that after being notified that Bourbeau and Perry had been seen in Oakes, and having been given the license number and description of the car they were driving, he determined that the car was registered in Mrs. Wold's name and had been reported as stolen. He located the defendants in the Ark Lounge in Oakes, at which time he asked them where the car was. He testified that Bourbeau pointed to the white Galaxie and said "that's our car," and was cut off by Perry, who said, "We don't have a car." (This testimony was not objected to.) Raugutt subsequently placed the defendants under arrest. This took place on March 20, 1976.

Mr. Bourbeau's testimony was that he and Mr. Perry left Fargo on the night of March 16 to hitchhike to Oakes, and that they were given a ride by Gary Meeks. He stated that the three of them stopped at a bar in Casselton that evening, at which time he purchased the 1963 Galaxie 500 from Meeks for $250 cash, and that Meeks said he would send him the title. Bourbeau then drove to Oakes, arriving at 1:00 or 1:30 the morning of March 17. He further testified that, at the time of the trial, he did not know where Mr. Meeks could be found.

It appears that the ignition switch had been changed between the time Mrs. Wold last used her car and her recovery of it. Mr. Bourbeau testified that he noticed at the time he purchased the car that the switch did not appear to be a factory one, but he thought Meeks had changed it because of ignition trouble. There was testimony that the trunk lid had been damaged,

but there was some confusion as to whether the lock had been damaged. There also was reference to personal property of Mrs. Wold's which had been in the car, but only the automobile was mentioned in the Information.

Bourbeau and Perry were charged by separate complaints dated March 22, 1976. The pertinent part of each complaint in essence stated the defendants committed the offense of theft of property in violation of Section 12.1–23–02 of the North Dakota Century Code, by knowingly receiving or retaining the property of another, which had been stolen, with intent to deprive the owner thereof, to-wit: 1963 Ford Galaxie, ND License # 177203, which was the property of and in the possession of Lillian Wold.

After a Preliminary Examination, Bourbeau and Perry were bound over to district court on March 31, 1976. The original Information, dated April 2, 1976, used virtually the same language as the complaint.

On April 2, an arraignment was held in Cass County District Court, and at that time the State moved to amend the Information, pursuant to Rule 7(e), N.D.R. Crim.P. The motion was denied. On April 8, the State filed an amended Information with the court and again moved to amend, changing the language from having received or retained the property of another which had been stolen to having "exercised unauthorized control over the property of another." Counsel for the defendants resisted the motion, and it was again denied. Trial was held on April 12, 1976, and at the close of the State's evidence, the Assistant State's Attorney again moved to amend the Information. This time the motion was granted. The jury returned a guilty verdict as to both Bourbeau and Perry, based on the amended Information, and they were sentenced to three years and 30 days in the State Penitentiary. Defendants moved for a new trial pursuant to Rule 33, N.D.R. Crim.P., and for arrest of judgment, pursuant to Rule 34, N.D.R.Crim.P. Both motions were heard and denied by the trial court.

This appeal is taken from the judgment of the district court and its sentence thereon.

It is the position of the defendants that the amendment of the Information was not proper under Rule 7(e), N.D.R.Crim.P. If it is found that Rule 7(e) was properly applied, it is the defendants' contention that their right to be informed of the nature of the charge, guaranteed by the Sixth Amendment to the United States Constitution, was violated.

Both versions of the Information accused Bourbeau and Perry of "theft of property in violation of Section 12.1–23–02 of the North Dakota Century Code," which statute reads as follows:

"A person is guilty of theft if he:

"1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof;

"2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; or

"3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof."

The only difference between the original Information and the amended Information is that the former charged that the defendants "did knowingly receive or retain the property of another, which had been stolen . . . ." while the latter charged them with "knowingly exercising unauthorized control over the property of another." The Information at all times charged Bourbeau and Perry with violating Section 12.1–23–02, but the amendment substituted the language of subsection 1 for that of subsection 3.

Title 12.1, N.D.C.C., became a part of our Code as a result of a 1971–1973 interim study on the part of the Committee on Judiciary "B" of the North Dakota Legisla-

tive Council. The concept of consolidation of theft offenses, inherent in Section 12.1–23–02, is referred to in the section preceding it:

"1. Conduct denominated theft in sections 12.1–23–02 to 12.1–23–04 constitutes a single offense designed to include the separate offenses heretofore known as larceny, stealing, purloining, embezzlement, obtaining money or property by false pretenses, extortion, blackmail, fraudulent conversion, receiving stolen property, misappropriation of public funds, swindling, and the like.

"2. An indictment, information, or complaint charging theft under sections 12.1–23–02 to 12.1–23–04 which fairly apprises the defendant of the nature of the charges against him shall not be deemed insufficient because it fails to specify a particular category of theft. The defendant may be found guilty of theft under such an indictment, information, or complaint if his conduct falls under sections 12.1–23–02 to 12.1–23–04, so long as the conduct proved is sufficiently related to the conduct charged that the accused is not unfairly surprised by the case he must meet." § 12.1–23–01, N.D.C.C.

A brief review of the evolution of the theft sections of the Criminal Code should be helpful in a comparative examination of the subsections of Section 12.1–23–02, N.D. C.C.

Theft covers an area of criminal law which was composed of several separate crimes prior to adoption of the new North Dakota Criminal Code. For background information on the historical development of the criminal law in England and in this country, see LaFave & Scott, Handbook on Criminal Law § 84 (1972).

■ When the Judiciary "B" Committee considered this area of the law, the following quotation from LaFave & Scott was read into the minutes.

"The fine distinctions between larceny, embezzlement and false pretenses are often difficult to make in a particular case. The principal beneficiary of the difficulty is the defendant who undoubtedly has misappropriated another's property in one of the three ways covered by the three crimes. The modern remedy is to consolidate these three separate crimes (perhaps including also the separate crimes of receiving stolen property, and blackmail or extortion) into one consolidated crime called 'theft.' Under this plan, one charged with 'theft' can be convicted whether the proof shows what was formerly larceny or embezzlement or false pretenses (or receiving, or blackmail or extortion.)" LaFave & Scott, supra, § 91 at 673. See Minutes of the Committee on Judiciary "B", North Dakota Legislative Council, June 21–22, 1972, at 39.

Significant also is the following from that treatise.

"We have seen that English legal history explains the fact that, in most American jurisdictions today, the wrongful appropriation of another's property is covered by three related but separate, non-overlapping crimes—larceny, embezzlement and false pretenses. This fact, together with the fact (discussed below) that the borderlines between the three crimes are thin and often difficult to draw, has given rise to a favorite indoor sport played for high stakes in our appellate courts: A defendant, convicted of one of the three crimes, claims on appeal that, though he is guilty of a crime, his crime is one of the other two. Sometimes this pleasant game is carried to extremes: A defendant, charged with larceny, is acquitted by the trial court (generally on the defendant's motion for a directed verdict of acquittal) on the ground that the evidence shows him guilty of embezzlement. Subsequently tried for embezzlement, he is convicted; but he appeals on the ground that the evidence proves larceny rather than embezzlement. The appellate court agrees and reverses the conviction." LaFave & Scott, supra, § 91 at 673.

See, e. g., Commonwealth v. O'Malley, 97 Mass. 584 (1867); Nichols v. People, 17 N.Y. 114 (1858).

Early in its deliberations, the Committee on the Judiciary "B" decided to use the proposed Federal Criminal Code as a basis for its work. The members were given copies of the proposed Federal Code and the Working Papers of the National Commission on Reform of Federal Criminal Laws. *See Minutes of the Committee on Judiciary "B"*, North Dakota Legislative Council, Jan. 24–25, 1972, at 26–28. As a result, pertinent language in Sections 12.1–23–01 and 12.1–23–02, N.D.C.C., does not vary in substance from that of Sections 1731 and 1732 of the proposed Federal Code. In this light, we refer to the commentary of the draftsmen of the proposed Federal Code regarding the phrase "taking or exercise of unauthorized control" as used in the first subsection, this being the language of the amended Information.

"The object of the defendant's conduct is unauthorized control, *i. e.,* any form of control over property which exceeds the permissible range of control attributable to any legal interest he may have in the property or to authority given by someone entitled to give it. 'Taking' unauthorized control is meant to include the typical larceny situation, where the defendant at the time of acquisition of property is engaging in unauthorized conduct. 'Exercising' unauthorized control is meant to include the typical embezzlement situation, where the defendant already has lawful control of the property but where he exceeds his authority in some material way. *Between the two terms—between taking and exercising unauthorized control—all of the major forms of acquisitive behavior are meant to be covered, without inquiry into essentially irrelevant factors such as whether a caption or asportation has occurred, whether the defendant committed a trespassory taking or had custody of the property, and the like. The debate is meant to be shifted to the issue of whether the defendant had control over the property, and whether that control was authorized.* These are the criminologically significant elements. The circumstances which led to the particular form

of unauthorized control are relevant to his culpability—to the existence of the required mental elements and to the grading of the particular offense—but are not relevant to the issue of whether the objective conduct—the actus reus, to use the technical term—has occurred." (Emphasis by the court.) National Commission on Reform of Federal Criminal Laws, II Working Papers 915 (1970).

■ In discussing the phrase "receives, retains or disposes of" (the language utilized in the original Information against Bourbeau and Perry), the Federal draftsmen adopted the reasoning of the Model Penal Code:

"Analytically, the receiver does precisely what is forbidden by Section 206.1 [similar to Section 23.1–23–02, N.D.C.C.], namely, he exercises unauthorized control over property of another with the purpose of applying or disposing of it permanently for the benefit of himself or another not entitled. From the practical standpoint, it is important to punish receivers in order to discourage theft. The existence and functioning of the 'fence,' a dealer who provides a market for stolen property, is an assurance especially to professional thieves of ability to realize the unlawful gain.

"Consolidation of receiving and other forms of theft affords the same advantages as other aspects of the unification of the theft concept. It reduces the opportunity for technical defenses based upon legal distinctions between the closely related activities of stealing and receiving what is stolen. One who is found in possession of recently stolen goods may be either the thief or the receiver; but *if the prosecution can prove the requisite thieving state of mind it makes little difference whether the jury infers that the defendant took directly from the owner or acquired from the thief.* Consolidation also has a consequence favorable to the defense by making it impossible to convict of two offenses based on the same transaction, as has occasionally happened under existing law, when a

man is held guilty as a principal in the original theft because he helped plan it and also of the 'separate' offense of receiving because he took his share of the proceeds." (Emphasis by the court.) National Commission on Reform of Federal Criminal Laws, II Working Papers 933–934, quoting Model Penal Code § 206.8, comment at 93–94 (Tent. Draft No. 2, 1954).

We subscribe to this reasoning.

In determining whether the amendment of the Information in this case violated Rule 7(e), N.D.R.Crim.P., we look to the language of that rule:

"The court may permit an information to be amended at any time before verdict or finding, if no additional or different offense is charged and substantial rights of the defendant are not prejudiced."

█ We think it fairly apparent, in view of the above discussion, that a different offense was not charged. The facts of this case appear to us to fit in the built-in "overlap" between Sections 12.1–23–02(1) and 12.1–23–02(3), discussed by the draftsmen of the Federal Rule:

"This is the major section on theft in the proposed Code. The overlap among the three paragraphs of subsection (1) is intended to insure that everything which is now theft by any name will be covered. The paragraphs do not differ otherwise in the elements which must be proved; the culpability requirement in each is 'knowingly . . . with intent to deprive'. Section 1731 makes clear that theft need not be charged under any particular paragraph. . . ." National Commission on Reform of Federal Criminal Laws, Final Report § 1732, comment at 206–207 (1971).

██ Rule 7(e) also requires that substantial rights of the defendants not be prejudiced. Counsel argues that defendants' substantial rights have been prejudiced in that they were unfairly surprised by the amendment and could not properly

prepare their case. While Section 12.1–23–01(2), N.D.C.C., *supra,* may not explicitly refer to amendment of an information, that section would not permit conviction under an information which leads to the defendant being unfairly surprised. We conclude that the defendants were not surprised in the instant case.

We are convinced that there was no violation of either Rule 7(e), N.D.R.Crim.P., or Section 12.1–23–01(2), N.D.C.C. The meaning of the language of both the original and amended Informations is so similar that counsel's preparation under either one would vary insignificantly. *See* Section 1–02–02, N.D.C.C. In view of the facts, defendants could not have been surprised by the amendment. The State moved to amend the information on April 2, 1976. The motion was denied "without prejudice to a future motion", the court indicating a wish to hear the State's proof prior to making a decision on the motion.[1] The motion was again made and denied on April 8, after objection to the motion by defense counsel. The court again based denial upon its need to hear the evidence. In light of these previous motions, and the court's statements that it would have to wait until the State's evidence was submitted, defense counsel should have anticipated that a motion to amend would be made at that time.

█ Bourbeau and Perry phrase most of their argument in terms of the Sixth Amendment to United States Constitution and its guarantee of "[the right] to be informed of the nature and cause of the accusation . . ." While the Sixth Amendment does not apply directly to state prosecutions, the United States Supreme Court has said that the above stated right has been incorporated into the Due Process clause of the Fourteenth Amendment and is thus applicable to the states. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). *See Re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

---

1. The trial court misconstrued Rule 7(e). Ideally, an amendment should be permitted as soon as possible to give the defendant as much time as possible to prepare for his defense.

As the amendment to the Information did not vary the nature of the charge against Bourbeau and Perry, we find no denial of Due Process.

■ It is argued that the amendment of the Information worked to deprive Bourbeau and Perry of their right to a preliminary examination.

A preliminary examination was held, at which time it was determined that there was probable cause to believe that an offense had been committed and that the defendants committed it. Pursuant to Section 29–09–06, N.D.C.C., the State's Attorney filed an Information "charging the commission of a crime according to the facts ascertained on such examination. . . ." We conclude that the amendment of the Information to charge a crime under the same set of facts, with the same culpability requirements, and requiring proof of the same elements, does not require a new preliminary examination. We find that to be the situation in this case.

The State submits that Section 29–09–02(2), N.D.C.C., allows the filing of an Information against a person accused of committing a crime, which crime is committed during the district court term in that county. There is case law so applying that statute. *State v. Riley,* 26 N.D. 236, 144 N.W. 107 (1913).

This court has held in the past that the right to a preliminary hearing is purely statutory, and not constitutional in nature. *State v. Persons,* 201 N.W.2d 895 (N.D. 1972); *State v. Rudolph,* 193 N.W.2d 237 (N.D.1971); *Green v. Whipple,* 89 N.W.2d 881 (N.D.1958). However, due to an increased awareness of the constitutional importance of the preliminary hearing, we decline to rule on the application of Section 29–09–02(2) here, it not being necessary to the resolution of this case. *Cf. Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

■ Finally, we come to the argument by Borbeau and Perry that, by sentencing them to each serve three years and one month, they were denied their right to

credit for time served allowed by Section 12.1–32–02(2), N.D.C.C. Upon questioning by this court during oral argument, defense counsel stated that he would not waste our time by arguing this issue, since it was of little merit. We agree. There is no showing that the trial court abused its discretion in passing sentence. Theft of an automobile is classified as a class C felony under Section 12.1–23–05(2)(d). The sentence imposed was substantially less than the five year maximum for that class of offense. Section 12.1–32–01, N.D.C.C.

For the reasons stated in this opinion, the judgment of the trial court is affirmed.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.