STATE of North Dakota, Plaintiff
and Appellee,

v.

Herbert O. JENSEN, Defendant
and Appellant.

Crim. No. 554.

Supreme Court of North Dakota.

Feb. 17, 1977.

See also N.D., 241 N.W.2d 557.

Lyle Huseby, of Huseby & Aarestad, Fargo, and Leo Broden, Devils Lake, for defendant and appellant.

VOGEL, Justice.

The defendant was charged with two counts of murder in the first degree. At the close of the State's evidence in a trial before a jury, the court ordered the charges reduced to murder in the second degree. The jury found the defendant guilty on both counts. He was sentenced to twenty years' imprisonment on each count, with an additional ten years' confinement on each count as a dangerous offender, as permitted by Section 12.1–32–09, N.D.C.C. The sentences were ordered served concurrently.

The defendant appealed. We reverse and remand for a new trial.

Most of the questions in this case result from complexities involved in the adoption of a completely new criminal code in this State. It was adopted by the 1973 Legislature as Chapter 116, 1973 Session Laws, to be effective July 1, 1975, and was amended in some respects by the 1975 Legislature as Chapter 116, 1975 Session Laws.* It is hereinafter referred to as the "New Code" and the former as the "Old Code."

The homicides in question occurred on November 16, 1974, some 7½ months before the effective date of the New Criminal Code, but the trial occurred after the effective date.

The defendant, a retired veteran of the United States Air Force, left Fargo, North Dakota, on November 15, 1974. He was released from the Veterans Administration hospital on that day, with supplies of tranquilizing and other drugs. After a short stop in Jamestown, he proceeded by automobile toward Minot, carrying a concealed pistol and intending to poach a deer out of season if he saw one.

Near Pingree, about twenty miles north of Jamestown, he saw two hitchhikers wearing clothing inadequate for the cold

Clifford C. Grosz, State's Atty., Fessenden, and Calvin N. Rolfson, Deputy Atty. Gen., Bismarck, for plaintiff and appellee State of North Dakota; argued by Mr. Rolfson.

* Information as to the sources and legislative history of the New Code may be found in *State v. Bourbeau*, 250 N.W.2d 259 (N.D.1977), and will not be repeated here.

weather, and he picked them up. He treated them to hot brandy and wine at three different establishments, leaving the third one at about 1 a.m.

At about 3:30 a.m., the bodies of the two hitchhikers were found on the shoulder of a road near Harvey, and about three hours later, the defendant was found slumped over the steering wheel of his automobile about thirty miles northwest of the place where the bodies were found. In his vehicle were found a billfold of one of the victims, blood, a wine bottle containing a fingerprint of the other victim, and the pistol of the defendant. The defendant testified to events up until their arrival at the first bar at which wine was purchased and asserts he was blacked out, except for hazy recollections of one or two insignificant events thereafter.

The bullets which caused the death of the victims were fired from the defendant's pistol.

The defendant offered as defenses intoxication, temporary insanity, and self-defense.

## I

The defendant's first contention is that he was deprived of due process of law because of the failure of the trial court to advise him of his right to make an election as to (1) whether to interpose defenses available under former law or to interpose defenses available under the New Criminal Code effective July 1, 1975, and (2) whether to be sentenced under the provisions of former law or under the New Criminal Code.

■ The defendant is clearly correct in stating that the former law governs in his case unless he agrees to be bound by the New Code provisions as to defenses and sentencing. The relevant statutory provisions are:

"2. This title, except as provided in subsection 3 of this section, shall not apply to offenses committed prior to its effective date. Prosecutions for such offenses shall be governed by prior law,

which is continued in effect for that purpose. For the purposes of this section, an offense was committed prior to the effective date of this title if any of the elements of the offense occurred prior thereto.

"3. In cases pending on or after the effective date of this title, and involving offenses committed prior thereto:

"a. The provisions of this title according a defense or mitigation shall apply, with the consent of the defendant.

"b. The court, with the consent of the defendant, may impose sentence under the provisions of this title which are applicable to the offense and the offender." Sec.12.1–01–01, N.D.C.C. [New Code].

Unless the defendant consented, the old law would apply in its entirety.

However, it does not necessarily follow that there was a duty on the part of the trial judge to specifically give notice on the record to the defendant of his right to make elections as to defense or sentencing, or both. The defendant had his own attorney to advise him, and we presume he did. That attorney certainly was aware of the right to elect as to defenses and sentencing, as will appear below. In fact, he made elections as to both.

■ We hold that the provision of Section 12.1–01–01, subsection 3, that the provisions of the New Criminal Code as to defense or mitigation shall apply with the consent of the defendant, does not impose upon the trial judge a duty to give notice to the defendant of a right to elect between the Old Code and the New Code. We hold that the language as to "consent of the defendant" means simply that he may consent to the application of the New Code, but that the matter is one to be raised by him or his attorney, not necessarily by the trial court.

■ We further find that the defendant actually made an election to be covered by the provisions of the New Code as to defenses. During the discussion as to pro-

posed instructions to the jury, the defendant's attorney made an exception to

". . . that particular instruction on voluntary intoxication on the basis that it quotes the law that is no longer in effect and does not apply to this case because the new code that went into effect specifically authorizes and gives the defendant the benefits of the defenses allowed therein, one of which is the defense of voluntary intoxication."

This is an election, and is the "consent" referred to in Section 12.1–01–01, subsection 3–a.

■ As to subsection 3–b of Section 12.1–01–01, the defendant similarly made an election to be covered by the sentencing provision of the New Code. His attorney said, during the same conference on the proposed instructions:

"The defendant—I, on behalf of the defendant—would definitely consent that he be sentenced under the provisions of the new Code which went into effect on July 1, 1975."

II

The defendant asserts that the instruction given to the jury by the court on the question of insanity as a defense was made up of elements of both the Old and New Codes and was hopelessly confusing to the jury.

The instruction as given is as follows:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. 'Mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct. Lack of criminal responsibility under this section is a defense.

"This defense is established if the defendant, at the time of the commission of the alleged offense, was laboring under such a defect of reason from disease (abnormality) of the mind as not to know the

nature (the physical characteristics) and the quality (harmfulness) of the act, or, if he did know it, that he did not know he was doing what was wrong (meaning disapproved by society). Otherwise, the defendant is legally sane and is subject to prosecution.

"If the defense of Insanity is established then the defendant must be acquitted and your verdict must be, 'Not guilty by reason of insanity' and the case will be at an end.

"If the defense of insanity is not established you must then consider whether the State has proved the material allegations of the criminal Informations."

The first paragraph of the instruction as given is taken from Section 12.1–04–03, the New Code provision as to insanity as a defense. The trial court could have stopped at this point.

Instead, the trial court gave the final three paragraphs, which are excerpted from North Dakota Jury Instruction 1312, based upon the Old Code and judicial interpretations of it.

■ Both the Old Code and the New Code are based upon the M'Naghten rule [*Rex v. MacNaghten*, 8 Eng.Rep. 718, 4 State Tr. NS 847 (1843), reported in 10 Clark & Finnelly 200 as *M'Naghten's Case*]. See "A Hornbook to the North Dakota Criminal Code," 50 N.D.L.Rev. 639, at 665 (1974). However, there are substantial differences in the formulation of the rule between the Old Code and the New Code, i.e., between the first and second paragraphs of the instruction quoted above. The most significant difference is that the New Code requires only a lack of "substantial capacity" to appreciate the criminality of the act or to conform conduct to the law, while the Old Code required a complete lack of knowledge of the nature and quality of the act. The New Code is a clear departure from the usual interpretation of *M'Naghten*, under which a complete impairment of cognitive capacity and capacity for self-control is necessary. "A Hornbook to the North Dakota Criminal Code," *supra*, p. 666, quoting Wayne R. LaFave and Austin

W. Scott, *Handbook on Criminal Law,* Hornbook Series (St. Paul: West Publishing Co., 1972), p. 293.

 We also note that the trial court gave the jury the option of .finding the defendant "not guilty by reason of insanity," a verdict not authorized under the New Code. The comparable defense under the New Code is not insanity, but mental disease or defect which excludes responsibility. Sec. 12.1–04–10, N.D.C.C. While it is true that Section 29–22–16, N.D.C.C., appears to permit a verdict of "not guilty by reason of insanity," we can only conclude that this section is repealed by implication by the adoption of Sections 12.1–04–03 to 12.1–04–10, N.D.C.C. The latter section provides for a defense of "mental disease or defect which excludes responsibility" and requires that the State's attorney shall file a written application with the county mental health board for determination of the defendant's need for institutional custody, care, or treatment in cases where ". . . the defendant is acquitted on the ground of mental disease or defect which excludes · responsibility, . . ." From this we can only conclude that the court, whenever the defense is offered and supported, must either submit to the jury a form of verdict permitting it to find the defendant not guilty by reason of mental disease or defect which excludes responsibility, or the court must submit a special interrogatory to accompany a verdict of not guilty inquiring as to whether the verdict was based upon the defense. Otherwise, it would be impossible to ascertain from a verdict of acquittal whether it was based upon the defense or not.

The defense attorney, during the discussion of the proposed instructions, sufficiently objected on all the points we have mentioned. He clearly pointed out that the court's proposed instructions "are based on the law as it existed prior to July 1, 1975 and they no longer reflect the law in effect or the law applicable to this case, and it denies the defendant his right to have the benefit of the defenses provided in the new law." He also objected that it "does not encompass the irresistible impulse provisions of the new law" and that a verdict of not guilty by reason of insanity "is no longer a proper verdict as the only plea permissible is a 'not guilty' plea under the rules."

 We believe the instruction as given is a confusing blend of the insanity defense permitted by the Old Code and the insanity defense permitted by the New Code. There are important differences between the two, and the New Code is more favorable to the defendant than is the Old Code, particularly in view of his attempt to defend on the ground of mental disease or defect. We cannot say that the defendant was not prejudiced or that the jury was not confused.

██ As we pointed out in I, above, the defendant consented to the application of the defenses provided by the New Code, including the defense of mental disease or defect. Having done so, he was entitled to an instruction to the jury on that defense, unclouded by reference to former statutes and interpretations no longer in effect. The instruction given misstated. the. law, prejudiced the defendant, and constituted reversible error.

"We therefore reverse on this ground alone, since the instruction was erroneous and related to a subject which was central to the case, and therefore affected the substantial rights of the defendant. *State v. Maresch,* 75 N.D. 229, 27 N.W.2d 1 (1947).

. . . . .

"While, as we have said, we consider the evidence sufficient for conviction, it is likewise true that the jury may have acquitted the defendant if it were not for the misleading instruction. The fact that the evidence was ample for a conviction does not alter the requirement of a fair trial. *State v. Schlittenhardt,* 147 N.W.2d 118 (N.D.1966)." *State v. Haakenson,* 213 N.W.2d 394, 401 (N.D.1973).

### III

The defendant next asserts that he was deprived of a defense of intoxication by the court's instruction to the jury.

The court instructed the jury under the Old Code, rather than the New Code. The old law was found in Section 12–05–01, N.D.C.C., which provided:

"Intoxication as defense.—No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act."

The New Code provision in regard to intoxication as a defense is Section 12.1–04–02:

"Intoxication.—1. Intoxication is a defense to the criminal charge only if it negates the culpability required as an element of the offense charged. In any prosecution for an offense, evidence of intoxication of the defendant may be admitted whenever it is relevant to negate the culpability required as an element of the offense charged, except as provided in subsection 2.

"2. A person is reckless with respect to an element of an offense even though his disregard thereof is not conscious, if his not being conscious thereof is due to self-induced intoxication."

Having elected to be governed by the defenses specified in the New Code, the defendant was entitled to an instruction as to intoxication based upon the New Code, not the Old Code.

■ We have determined that the case must be reversed and remanded for a new trial because of error in the instruction as to insanity. Therefore, we need not determine whether reversible error was committed in the instruction as to intoxication as a defense. We hope that the difficulties encountered in this case because of the application of the transition statute [§ 12.1–01–01, N.D.C.C., quoted above], especially as

applied to intoxication of a defendant, will not arise again.

## IV

The defendant next contends that the court violated the New Code in imposing additional ten-year sentences on him as a dangerous special offender, under Section 12.1–32–09, subsection 1–e, without giving the five-day notice of a hearing on imposition of the additional penalty, as required by subsection 4 of that section.

The sentence was imposed at a time fixed by the court, with notice to both parties, but the notice did not state that it was given in compliance with Section 12.1–32–09. However, the prosecution had previously given notice of its intention to invoke the statute.

■ Since this case is necessarily remanded for new trial, we need not determine whether the lack of the five-day notice is prejudicial error. In any case, if it were error, the remedy would be to remand for new sentencing only. If there is a conviction on retrial, we are confident that the five-day notice will be given.

## V

■ We come now to allegations of prejudicial error in the admission of evidence. First, and most serious, is the claim that the defendant was not allowed to testify to the content of conversations he had with the two decedents while he was in their company. Such testimony was objected to as hearsay, and the objection was sustained. The testimony was offered to ". . . establish what the defendant learned about these two individuals when he was with them." The testimony offered was not hearsay. It was not offered to establish the truth of the content of the conversations, but to establish the state of mind of the defendant, which was relevant to his asserted defenses of mental disease or defect excluding responsibility and intoxication and self-defense. See McCormick on Evidence, 2d Ed., § 249, pp. 589–590; *Stude v. Madzo*, 217 N.W.2d 5 (N.D.1974); N.D.

R.Ev. 801(c) [to become effective February 15, 1977].

"The state of a man's mind is as much a fact as the state of his digestion." Benjamin N. Cardozo (quoting Lord Bowen) in "Law and Literature," *Selected Writings of Benjamin Nathan Cardozo*, Margaret E. Hall, ed. (New York: Fallon Law Book Company, 1947), p. 346.

Since the excluded evidence was highly material to the proposed defenses of the defendant, and its exclusion severely limited his defense, the error in excluding it was reversible error.

Since, upon retrial, the North Dakota Rules of Evidence will be in effect, we will briefly mention two other areas of evidence excluded at the former trial which will clearly be admissible at the new trial.

Psychiatrists and other experts may testify as to their conclusions, even though based upon reports of psychologists not in evidence. N.D.R.Ev. 703; *Minot Sand & Gravel Co. v. Hjelle*, 231 N.W.2d 716 (N.D.1975).

Psychiatrists and other experts may be allowed to testify to their opinions on the ultimate fact to be determined by the jury, namely, whether the defendant, at the time of the offense, had substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law as of the time of the alleged offense. It is not a proper objection that an expert is testifying to an ultimate fact. N.D.R.Ev. 704. *Minot Sand & Gravel Co. v. Hjelle, supra.*

Reversed and remanded for new trial.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.