STATE of North Dakota,
Plaintiff-Appellee,

v.

Gregory M. PFISTER,
Defendant-Appellant.

Cr. 622.

Supreme Court of North Dakota.

March 30, 1978.

Johnson, Milloy, Johnson, Stokes & Robinson, Wahpeton, for defendant-appellant; argued by Rauleigh D. Robinson, Wahpeton.

Earle R. Myers, Jr., State's Atty., Wahpeton, for plaintiff-appellee.

PAULSON, Justice.

This is an appeal by the defendant, Gregory M. Pfister, from the two judgments of conviction entered by the Richland County District Court upon jury verdicts finding Pfister guilty on two separate charges of delivery of a controlled substance, in violation of § 19–03.1–23(1) of the North Dakota Century Code.

■ Pfister raised the affirmative defense of entrapment at the trial. Prior to instructing the jury, the trial judge dis-

cussed the proposed jury instructions with the parties in the court's chambers. At that time Pfister's attorney made the following specific objection to the court's proposed jury instruction regarding the entrapment defense:

"It is my position what you intend to give here would be wholly contrary to law, in that it is an [sic] subjective standard and not an objective standard. I would ask that the instruction be changed and give the objective standard rather than the subjective standard." [1]

The trial judge instructed the jury on entrapment, using the court's proposed instruction to which Pfister had objected. The jury returned verdicts of guilty, upon which the trial court entered judgments of conviction and sentenced Pfister to two concurrent terms of two years at the North Dakota State Penitentiary.

On this appeal, Pfister asserts that the trial court's jury instruction on entrapment was erroneous and prejudicial. Pfister requests this court to reverse the judgments of conviction and to grant him a new trial on both charges. Pfister has raised the following issues with regard to his assertion that the trial court's jury instruction on entrapment was erroneous:

1. Whether the proper test of entrapment in North Dakota is the "objective" or the "subjective" test.
2. Whether the State or the defendant has the burden of proof regarding the affirmative defense of entrapment.
3. Whether the issue of entrapment is a question for the judge or the jury.

The United States Supreme Court first recognized the defense of entrapment in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), in which the Court adopted the subjective test of entrapment which focuses on the defendant's predisposition to commit the crime as well as

1. Although the jury instruction on entrapment proposed by Pfister's attorney was an obvious attempt to purvey the objective test of entrapment, it also contained certain elements of the subjective test. Nevertheless, we believe the specific objection to the court's proposed entrapment jury instruction made by Pfister's counsel in chambers was an adequate exception, pursuant to Rule 30(c) of the North Dakota Rules of Criminal Procedure, to preserve Pfister's right to appeal on this ground.

the conduct of the government's agents. Although the Court has continued to follow the *Sorrells'* subjective test, there is a strong minority view on the Court which advocates the use of an objective test in which the defendant's predisposition to commit the crime is irrelevant to the entrapment defense. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United Sates,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

Justice Stewart's dissent in *Russell* articulately describes the differences between the subjective and the objective approaches to entrapment, in *Russell, supra,* 411 U.S. at 440–441, 93 S.Ct. at 1647:

"In *Sorrells v. United States, supra,* and *Sherman v. United States, supra,* the Court took what might be called a 'subjective' approach to the defense of entrapment. In that view, the defense is predicated on an unexpressed intent of Congress to exclude from its criminal statutes the prosecution and conviction of persons, 'otherwise innocent,' who have been lured to the commission of the prohibited act through the Government's instigation. *Sorrells v. United States, supra,* 287 U.S., at 448, 53 S.Ct., at 215. The key phrase in this formulation is 'otherwise innocent,' for the entrapment defense is available under this approach only to those who would not have committed the crime but for the Government's inducements. Thus, the subjective approach focuses on the conduct and propensities of the particular defendant in each individual case: if he is 'otherwise innocent,' he may avail himself of the defense; but if he had the 'predisposition' to commit the crime, or if the 'criminal design' originated with him, then—regardless of the nature and extent of the Government's participation—there has

been no entrapment. *Id.* at 451, 53 S.Ct., at 216. . . .

"The concurring opinion of Mr. Justice Roberts, joined by Justices Brandeis and Stone, in the *Sorrells* case, and that of Mr. Justice Frankfurter, joined by Justices Douglas, Harlan, and Brennan, in the *Sherman* case, took a different view of the entrapment defense. In their concept, the defense is not grounded on some unexpressed intent of Congress to exclude from punishment under its statutes those otherwise innocent persons tempted into crime by the Government, but rather on the belief that 'the methods employed on behalf of the Government to bring about conviction cannot be countenanced.' *Sherman v. United States, supra,* 356 U.S. at 380, 78 S.Ct. at 824. Thus, the focus of this [objective] approach is not on the propensities and predisposition of a specific defendant, but on 'whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power.' *Id.,* at 382, 78 S.Ct. at 825. Phrased another way, the question is whether—regardless of the predisposition to crime of the particular defendant involved—the governmental agents have acted in such a way as is likely to instigate or create a criminal offense. . . ."

The jury instruction on entrapment, in the instant case, stated the subjective test.[2] Pfister objected to this jury instruction on entrapment. He contends on this appeal that the instruction was erroneous because North Dakota has legislatively adopted the objective test of entrapment. We agree.

■ In 1973, the North Dakota Legislature enacted an entrapment statute, § 12.1–05–11, N.D.C.C., which provides as follows:[3]

---

2. The jury instruction included the following pertinent language:

"The question of entrapment involves two issues. The first issue is whether the Defendant was led or induced to commit the crime by anyone acting for the State. That is, did the State initiate the criminal transaction? . . .

"The second issue is whether the defendant was ready and willing to commit the crime without persuasion. . . ."

3. Since the defense of entrapment has not been elevated to a constitutional dimension, the States are free to adopt any substantive definition of the defense they desire. We recognize

"*Entrapment.*—1. It is an affirmative defense that the defendant was entrapped into committing the defense.

"2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency."

The language of subsections 1 and 2 of § 12.1–05–11, N.D.C.C., is identical to the language of subsections 1 and 2 of § 702 of the proposed Federal Criminal Code.[4] It is therefore helpful, as an aid to interpreting the North Dakota entrapment statute, to look at the commentary of the draftsmen of the proposed Federal Criminal Code. *State v. Bourbeau,* 250 N.W.2d 259 (N.D.1977).

The Final Report of the National Commission on Reform of Federal Criminal Laws (1971) contains, in relevant part, the following commentary regarding § 702:

"This section, which represents the first federal codification of the judicially-developed defense of entrapment, changes existing federal law in several respects. The defense is treated primarily as a curb upon improper law enforcement techniques, to which the predisposition of the particular defendant is irrelevant.

The Working Papers of the National Commission on Reform of Federal Criminal Laws (1970), pages 303–328, contain the following statements which demonstrate an intent to adopt the objective test of entrapment in the proposed federal entrapment statute:

"These twin elements of *inducement* and *predisposition,* when conjoined, form the presently recognized basis for the entrapment defense.

"The proposed statute changes the existing law by giving principal significance to the inducements of the government. Entrapment is continued as a defense to a crime, but the question of the accused's predisposition is removed and the issue is framed rather in the objective terms of whether persons at large who would not otherwise have done so would have been encouraged by the government's actions to engage in crime. The focus of the proposed statute is on the activities of the government and their relation to the reasonable man. (Page 306.)

. . . . .

"The formulation of subsection (2) in proposed section 702 essentially follows the Model Penal Code view, which is that of the minority in *Sorrells* and *Sherman.* The language of the Model Penal Code is altered somewhat to insure that an objective standard is employed to determine whether police conduct is sufficiently unsavory to justify an entrapment defense. Needless to say, the accused's penchant for criminality, either on this occasion or in the past, is not to be placed in issue under this proposal, unless such evidence is admissible on some theory other than entrapment." (Page 320.)

Thus, in view of these sources, it appears that the drafters of the proposed federal entrapment statute clearly intended to adopt the objective test of entrapment.[5]

---

that if entrapment were of a constitutional dimension, the State Legislature, if it chose, could still adopt a stricter rule (i. e., provide greater rights for an individual) than the Federal Constitution requires. *State v. Stockert,* 245 N.W.2d 266 (N.D.1976); *State v. Matthews,* 216 N.W.2d 90 (N.D.1974).

4. U. S. National Commission on Reform of Federal Laws, A Proposed New Federal Criminal Code § 702 (1971).

5. Note Footnote 1 of Justice Stewart's dissent in *United States v. Russell, supra,* 411 U.S. at 441, 93 S.Ct. at 1647, in which he states the following:

"1. Both the Proposed New Federal Criminal Code (1971), Final Report of the National Commission on Reform of Federal Criminal Laws § 702, and the American Law Institute's Model Penal Code § 2.13 (Proposed Official Draft, 1962), adopt this objective approach."

The case of *State v. Mullen,* 216 N.W.2d 375 (Iowa 1974), is persuasive authority as an aid in our interpretation of the North Dakota entrapment statute. In *Mullen, supra,* the Iowa Supreme Court judicially adopted the language of § 702 of the proposed Federal Criminal Code as the standard for the entrapment defense in Iowa. The court interpreted this language as encompassing the objective test.

Pursuant to subsection 2 of § 12.-1–05–11, N.D.C.C., entrapment occurs when a law enforcement agent induces the commission of a crime by means likely to cause "normally law-abiding persons" to commit it. Under this statute, entrapment exists when two factors occur: (1) a law enforcement agent induces the commission of a crime; and (2) the method by which the law enforcement agent induces the commission of the crime is a method "likely to cause normally law-abiding persons to commit the offense." The defendant's predisposition to commit the crime is not included in the statutory definition of entrapment, and it is irrelevant to the entrapment issue.

We conclude that, under § 12.1–05–11, N.D.C.C., the objective test of entrapment has been legislatively adopted in North Dakota. We further conclude that the trial court, in the instant case, erroneously instructed the jury on the subjective test when it stated that the entrapment defense involved the issue of "whether the defendant was ready and willing to commit the crime without persuasion."

A jury instruction must be considered as a whole, and if and when it is so considered, it correctly advises the jury as to the law, it is sufficient, although a portion thereof, standing alone, may be insufficient or erroneous. *State v. Williams,* 150 N.W.2d 844 (N.D.1967). However, if a jury instruction, when read as a whole, is erroneous, relates to a subject central to the case, and affects substantial rights of the accused, it is, in itself, grounds for reversal and remand for a new trial. *State v. Jensen,* 251 N.W.2d 182 (N.D.1977); *State v. Jacob,* 222 N.W.2d 586 (N.D.1974).

In *Jensen, supra,* the defendant appealed from his conviction of second-degree murder on the ground, *inter alia,* that the jury instruction regarding the defense of insanity was erroneous because it consisted of a blend of the former criminal code provisions for the defense of insanity and the new criminal code provisions for the insanity defense. Justice Vogel, writing for a unanimous court, stated that the defendant was entitled to a jury instruction on the insanity defense "unclouded by reference to former statutes and interpretations no longer in effect." *Jensen, supra* 251 N.W.2d at 187. Justice Vogel concluded "The instruction given misstated the law, prejudiced the defendant, and constituted reversible error." *Jensen,* at 187. The case was remanded for a new trial.

In *Jacob, supra,* the defendant appealed from a conviction for aggravated assault and battery. He asserted that the jury instruction on self-defense was erroneous because it failed to state that excessive force was used only if the defendant used a greater force than the defendant "reasonably believed to be necessary". The instruction given by the trial judge did contain the language of the applicable self-defense statute, that the force used in self-defense must not be "more than sufficient to prevent such offense." Chief Justice Erickstad, writing for a unanimous court, stated, *Jacob, supra* 222 N.W.2d at 589:

"The instruction stated only that the force used in self-defense must not be 'more than sufficient to prevent such offense.' Although this is a quotation of the statute itself, it is incomplete and therefore erroneous. . . .

"We therefore reverse on this ground alone. Since the instruction was incomplete and thereby misleading and since it related to a subject central to the case, it affected the substantial rights of the defendant and accordingly entitles him to a new trial."

The jury instruction on entrapment in the instant case, like those in *Jensen, supra,* and *Jacob, supra,* is misleading and erroneous. Although the jury instruction

given by the trial court quotes from the entrapment statute, § 12.1–05–11, N.D.C.C., it also instructs the jury on the subjective test of entrapment. The jury instruction erroneously makes the defendant's predisposition or willingness to commit the crime an issue of the entrapment defense. The jury instruction is misleading, and it relates to the defendant's primary defense in the case. Therefore, this erroneous jury instruction affected the substantial rights of the defendant and entitles him to a new trial.

■ Pfister also contends on appeal that the trial court erroneously instructed the jury that the defendant has the burden of proving a government agent induced the commission of the offense. Pfister asserts that his constitutional right of due process was violated when the court placed this burden of proof on him, as the defendant. We disagree.

Subsection 1 of § 12.1–05–11, N.D.C.C., provides:

"1. It is an affirmative defense that the defendant was entrapped into committing the offense."

Subsection 3 of 12.1–01–03, N.D.C.C., provides, in relevant part:

"3. . . . An affirmative defense must be proved by the defendant by a preponderance of evidence."

Consequently, by virtue of legislative enactment, a defendant in North Dakota has the burden of proving the affirmative defense of entrapment by a preponderance of the evidence. The ultimate question is whether this law violates a defendant's constitutional right of due process.

■ In a criminal case, the Due Process Clause requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In *Mullaney, supra,* the State of Maine required a defendant who was charged with murder to prove by a preponderance of the evidence that he acted in the

heat of passion on sudden provocation in order to reduce the homicide to manslaughter. The United States Supreme Court held that this Maine law violated the requirement of the Due Process Clause. that the prosecution must prove beyond a reasonable doubt every fact necessary to constitute the crime charged. However, in the subsequent case of *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the United States Supreme Court concluded that constitutional rights of due process are not violated when the burden of proving certain affirmative defenses is placed on the defendant. In *Patterson, supra,* the State of New York required the defendant, who was charged with second-degree murder, to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance in order to reduce the homicide charge to manslaughter. The Court held that the defendant's due process rights were not violated by this New York law which placed the burden on the defendant to prove this affirmative defense. Justice White, writing for the majority, made the following statement regarding the burden of proof of affirmative defenses. *Patterson, supra* 432 U.S. at 210, 97 S.Ct. at 2327:

"We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here."

The United States Supreme Court held in *Leland v. State of Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), that the Due Process Clause is not violated by a State which requires a defendant to prove the defense of insanity beyond a reasonable doubt. The Court recently confirmed, by implication, its holding in *Leland, supra*, when it dismissed the appeal in *Rivera v. State of Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976), for want of a substantial federal question. *See Patterson, supra* 432 U.S. at 204, 97 S.Ct. at 2324. In *Rivera*, the issue presented on appeal was whether a defendant was denied his due process rights by a Delaware statute which required him to prove his insanity defense by a preponderance of the evidence. The defendant asserted before the United States Supreme Court that *Leland* had been overruled by *Winship* and *Mullaney*, and the Court dismissed the appeal as not presenting a substantial federal question.

We conclude that the statutory law of this State which requires a defendant to prove the affirmative defense of entrapment by a preponderance of evidence does not violate a defendant's due process rights. Accordingly, it is not error for the trial court to instruct the jury that the defendant has the burden of proving his defense of entrapment by a preponderance of the evidence.

The last issue raised by Pfister is whether the determination of entrapment is a question for the judge or the jury.

The majority opinions in *Sorrells, Sherman,* and *Russell, supra,* all hold that entrapment is a question of fact for the jury to determine. The minority opinions in these cases express the contrary view, that the question of entrapment is for the Court to decide. With regard to those States which have judicially adopted the objective test of entrapment, there is authority for the conclusion that entrapment is a question for the jury, as well as for the conclusion that entrapment is a question to be determined by the court and not by the jury. *State v. Mullen*, 216 N.W.2d 375 (Iowa 1974) (jury question); *Grossman v. State*, 457 P.2d 226 (Alaska 1969) (question for the court to decide).

We agree with the following statement of the majority in *Mullen, supra* 216 N.W.2d at 382:

"Certainly the jury can weigh conduct which might induce 'a normally law-abiding person' to commit a crime as surely as it can weigh (in a tort case) the required conduct of a 'reasonably prudent person'."

We believe the determination of entrapment is a question properly suited for jury determination. Accordingly we hold that the affirmative defense of entrapment presents a question of fact for the jury unless there is no dispute as to the facts or the inferences to be drawn from them, in which case the court will determine the question as a matter of law.

In accordance with this opinion, we reverse the judgments of conviction and remand for a new trial on both charges of delivery of a controlled substance.

ERICKSTAD, C. J., and VOGEL and SAND, JJ., concur.

PEDERSON, Justice, dissenting.

I do not agree that the trial court committed reversible error in the instruction on entrapment. Under § 12.1–05–11(2), NDCC, there is entrapment when, first, a person is "induced" by someone acting for the state, to commit a crime, (as distinguished from being merely afforded the opportunity to commit the crime), *and,* second, the "inducement" (or persuasion) which was used would likely cause a normally law-abiding person to commit the crime.

If there were no "inducement," there would be no entrapment and if the jury finds that the "inducement," if any, would not likely cause a normal law-abiding person to commit the crime, there would be no entrapment. Whether Pfister was more easily "induced" to commit the crime than a normal law-abiding person (in other words, whether he was predisposed to commit the crime) is a question that must be answered

when entrapment is used as a defense under our statute. That is all that the jury was instructed to do here. Perhaps a better choice of words could have been made—but instructions shouldn't be evaluated out of context in the scientifically pure atmosphere of a Supreme Court library. A number of times this court has said that "fair trials" not "perfect trials" are required. See *State v. Marmon,* 154 N.W.2d 55, 64 (N.D.1967); *State v. Iverson,* 187 N.W.2d 1, 44 (N.D.1971); *State v. Allen,* 237 N.W.2d 154, 162 (N.D.1975); Rule 52 N.D.R.Crim.P. A fair trial is all that the United States Supreme Court requires. *Michigan v. Tucker,* 417 U.S. 433, 446, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

To retry this case with a more perfect instruction on entrapment is not likely to change the result. The conviction should be affirmed.