No. 44,053

THE STATE OF KANSAS, *Appellant,* v. CLARENCE E. COOK, *Appellee.*

(399 P. 2d 835)

Opinion filed March 6, 1965.

*Keith Sanborn,* County Attorney, of Wichita, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Robert E. Hoffman,* Assistant Attorney General, both of Topeka, and *Kenneth L. Ingham,* Deputy County Attorney, and *Guy L. Goodwin,* Special Prosecutor for State of Kansas, both of Wichita, were with him on the brief for the appellant.

*Earl M. Clarkson, Jr.,* of Wichita, argued the cause, and *Wilmer E. Goering* and *I. D. Brown,* both of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an appeal by the State of Kansas from an order of the trial court sustaining a motion to discharge the defendant, Clarence E. Cook. For convenience, the appellant will be designated throughout this opinion as the State, while the appellee, Cook, will be referred to as the defendant.

The history of this case, which appears in this court for the second time, is briefly as follows: In an information filed directly in the district court of Sedgwick county, Kansas, the defendant was charged with the commission of a misdemeanor, *i. e.,* speeding. The information was signed by Guy L. Goodwin, deputy county attorney of Sedgwick county, and was verified positively by Paul Wade, a member of the Kansas Highway Patrol. After the information was filed, the defendant appeared with counsel and moved to quash the

information. This motion was sustained, and the State appealed from that ruling. On appeal, the action of the trial court was reversed and the case remanded for further proceedings. (*State v. Cook*, 193 Kan. 541, 393 P. 2d 1017.)

Subsequently, the case came on for trial, at which time the defendant appeared only by counsel. Through his counsel, the defendant stood mute and the court entered a plea of not guilty for him. Trial was had to the court without a jury and at the completion of the State's evidence the court sustained defendant's motion for discharge. The sole question presented in this appeal is succinctly stated in the defendant's brief, as follows: Did the trial court properly sustain defendant's motion for discharge?

The motion to discharge is as follows:

"Comes now the defendant, Your Honor, and moves to discharge the defendant for the reason that there has been no showing that a crime or misdemeanor has been committed by the defendant. And for the reason, Your Honor, that the arresting officer was three and a half miles from the scene of any even alleged violation; that it was not committed in his view or presence; that he is the signer, first, of the Uniform Notice to Appear; that he is also the signer of the Affidavit to the Information. That the evidence shows that he has no knowledge of it."

The trial court ignored the first ground stated in the motion, and no reliance is placed on that ground here. The sole and clearly stated basis of the trial court's decision, and the single argument made by the defendant in support of the lower court's action, is that the defendant's arrest was illegal. This claim of illegality is two-pronged: First, that whatever arrest was made by trooper Wade when he stopped the defendant's car was illegal because no offense had been committed in the officer's presence; and second, that any arrest which resulted from the filing of the information was void because Wade had verified the information without having personal knowledge of the facts alleged. On the sceond point, it may be said that the record wholly fails to disclose that a warrant was ever issued on the information, or that the defendant was ever arrested and brought into court on a warrant. However, this is immaterial in view of the decision we have reached in this case.

A proper understanding of the issues presented requires a brief resumé of the State's evidence. On November 6, 1963, the date of the alleged offense, three members of the Kansas Highway Patrol were checking traffic on U. S. Highway 81, north of Wichita. Two of the state troopers were in an aircraft, while the third trooper,

Paul Wade, was stationed on the ground approximately one-half mile north of the Sedgwick-Harvey county line. The two air-borne officers observed a northbound, dark red colored vehicle, which they followed some three miles to the Sedgwick county line, checking its speed by means of stop watches against previously established highway markings. By such means, the speed of the car was determined to be 76 miles per hour. Keeping the vehicle in sight, the two officers radioed Wade, who then stopped the car about one-half mile north of the county line and issued the defendant a document denominated, "Uniform Notice To Appear and Complaint."

In this somewhat hybrid instrument the officer charged the defendant with speeding and directed him to appear in the Court of Common Pleas at Wichita on November 15, 1963. The defendant signed a promise to appear at such place and time.

Subsequently, in January, 1964, the information hereinbefore mentioned was filed. This was verified by Wade, and charged the defendant with driving on U. S. Highway 81, at 101st Street in Sedgwick county, at a speed of 76 miles per hour in a 65 mile per hour speed zone. Wade testified at the trial that he first saw the defendant's car at about the county line and did not, of his own personal knowledge, observe the offense with which he charged the defendant.

The State first argues that the issuance of the traffic ticket, by which we presume is meant the notice to appear and complaint, did not constitute an arrest for a misdemeanor not committed in the issuing officer's presence. In support of this argument, two propositions are advanced: First, that no arrest was actually effected by the issuance of the ticket, and second, that even though an arrest was thus consummated, the offense charged was committed in the presence of Wade.

We approach a discussion of the first proposition by examining the pertinent provisions of the uniform act regulating traffic on highways. G. S. 1949, 8-5,128 (now K. S. A. 8-5,128) provides, in substance, that whenever any person is arrested for a misdemeanor in violation of the act and demands an immediate hearing, he shall immediately be taken before a court within the county in which the offense is alleged to be committed, while G. S. 1961 Supp., 8-5,129 (now K. S. A. 8-5,129) provides that whenever the person arrested is not given an immediate hearing, the officer shall prepare a written notice for him to appear in court at a specified time and

place, on the offense charged, and may require that a cash bond be given for appearance. Subsection (1) (d) of 8-5,129, *supra*, reads as follows:

"The arrested person in order to secure release as provided in this section, must give his written promise so to appear in court by signing in duplicate the written notice prepared by the arresting officer. The original of said notice shall be retained by said officers and the copy thereof delivered to the person arrested. Thereupon, said officer shall forthwith release the person arrested from custody."

G. S. 1949, 8-5,130 (now K. S. A. 8-5,130) recites that the foregoing provisions shall govern officers in making an arrest without a warrant for violations committed in their presence.

Careful consideration of the foregoing statutes forces us to conclude that an arrest of the defendant was effected at the time he was stopped, was issued the ticket, and agreed to appear. Not only are the terms "arrested person" and "arresting officer" used throughout the statutes, but a person arrested must take the affirmative action of giving his written promise to appear in order to secure his release. The language employed unmistakably indicates to us that the legislature intended that action by an officer in conformity with the procedures outlined in the act should constitute an arrest.

The second point urged by the State presents a problem of a different character: May it be said that the arrest was for an offense committed in the officer's presence? In answering this question, consideration must be given to the peculiar, and so far as we are concerned, the unique circumstances existing in this case. Our attention has not been directed to any decision where the factual situation was exactly parallel, nor has our research disclosed a case directly in point.

When may it reasonably be said that an offense against the traffic laws has been committed in the presence of the arresting officer? The answer must take account of modern conditions and, especially, the mobile nature of our population. Modern man is, indeed, a mobile mammal. His locomotion is endless; his travels, constant; his craving for speed, insatiable. High speed motors and super-highways combine to gratify his passion for high velocities. It is against this background that today's traffic officer must operate. Of necessity, new techniques of detection and apprehension have been developed and new scientific tools have been placed at the officer's command.

Under the conditions obtaining at the time of Cook's arrest we

believe it would be unreasonable to say that the offense charged was not committed in Wade's presence. Traffic was being checked north of Wichita by a team of three highway patrolmen—two in the air, the third on the ground. The two officers aloft not only checked defendant's speed from their plane, but they kept his car under constant surveillance and remained in radio communication with their earthbound fellow officer until Wade stopped the car. Wade, himself, observed defendant's car approaching for some half mile, at the very time he was receiving information about the car by radio from his companions.

In view of these circumstances, we are of the opinion that the offense with which Wade charged the defendant must be deemed to have been committed in Wade's presence. The law does not blindly close its eyes to reason. While holding fast to basic truths, it acknowledges the inevitablility of change and seeks to adapt itself to new conditions. For us to hold that Wade's arrest of the defendant was illegal would, under the conditions prevailing in this case, violate common sense.

The conclusion we have reached is not wholly devoid of support. In *Cave v. Cooley,* 48 N. M. 478, 152 P. 2d 886, the court laid down this rule:

"A crime is 'committed in presence of an officer' when facts and circumstances occurring within his observation, in connection with what, under circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case." (Syl. ¶ 3.)

The Supreme Court of West Virginia in the case of *State v. Lutz,* 85 W. Va. 330, 101 S. E. 434, held:

"An offense can be said to be committed in the presence of an officer only when he sees it with his own eyes, or sees one or more of a series of acts constituting [the] offense, and is aided by his other senses or by information as to the others, when it may be said the offense was committed in his presence." (Syl. ¶ 9.)

The language in the Lutz case was quoted with approval both in *State v. Koil,* 103 W. Va. 19, 136 S. E. 510 and in *Halko v. State,* 54 Del. 180, 175 A. 2d 42.

Although the foregoing cases are not identical with the instant action from a factual standpoint, the viewpoints expressed are comparable, and the language employed is persuasive.

A somewhat analogous situation was discussed in *Commonwealth v. McDermott,* 347 Mass. 246, 197 N. E. 2d 668, where an arrest

was made, not by the officer who had witnessed gambling operations, but by two others who later went with him to the scene. The court said that in such a case the knowledge of one was the knowledge of all. The same, we believe, can reasonably be said to be true here.

We believe that the trial court's order sustaining the defendant's motion for discharge was improper for still another reason. The law appears to be well settled that courts are not divested of jurisdictions to try persons accused of crime because the accused may have been unlawfully arrested. This rule is set out in 5 Am. Jur. 2d, Arrest, § 116, as follows:

"The fact that an original arrest may have been unlawful does not affect the jurisdiction of the court, nor is it a ground for quashing the information. And it does not preclude the trial of the accused for the offense." (p. 796.)

See also 22 C. J. S., Criminal Law, § 144, pp. 382, 383.

This rule was followed and applied in *State v. May,* 57 Kan. 428, 46 Pac. 709, where it was held:

"A district court of a county where a felony has been committed has jurisdiction to try the alleged offender, duly bound over on regular process, although he was originally arrested in another county without warrant and forcibly brought into the county where the crime was committed." (Syl.)

The May case was cited with approval in *In re Stilwell,* 135 Kan. 206, 208, 10 P. 2d 15.

Other matters have been raised by the State, but we deem it unnecessary to prolong this opinion further by engaging in their discussion.

For the reasons herein set forth, we believe the State's appeal was well taken and the same is hereby sustained.