STATE of North Dakota, Plaintiff
and Appellee,

v.

Sharon MEES, Defendant and Appellant.

STATE of North Dakota, Plaintiff
and Appellee,

v.

LaDonna MEES, Defendant
and Appellant.

Cr. Nos. 644, 645.

Supreme Court of North Dakota.

Nov. 28, 1978.

Richard L. Schnell, State's Atty. for Morton County, Mandan, for plaintiff and appellee.

Bair, Brown & Kautzmann, Mandan, for defendant and appellant Sharon Mees; argued by Dwight C. H. Kautzmann, Mandan.

DeNae H. M. Kautzmann, Mandan, for defendant and appellant LaDonna Mees.

SAND, Justice.

Defendants were each convicted before the Morton County Court of Increased Jurisdiction on charges of prostitution in violation of North Dakota Century Code § 12.1–29–03. Following a sentencing hearing on 16 March 1978, Sharon Mees was fined $100 plus one-half court costs and LaDonna Mees was fined $1.00 plus one-half court costs. Defendants now raise the following issues on appeal:

(1) Were the defendants arrested illegally because of a lack of personal observation on the part of the arresting officer;

(2) Did the trial court err in its application of § 12.1–05–11, NDCC, concerning the rule of entrapment; and

(3) Were defendants entitled to court-appointed counsel to represent them on appeal when no term of imprisonment had been imposed as part of their sentence.

During August and September 1977, David Batters was employed as an undercover agent for the Mandan Police Department assigned primarily to the investigation of possible violations of controlled substance laws. At the defendants' trial Batters testified that during the course of his investigation he observed the defendants four to six times in an establishment called the PlaMor Club, but the log book he was required to maintain as a part of his investigation contained no reference of his observations of the defendants prior to 20 September 1977. Batters further testified that during the times he observed the defendants they at times talked to men in the Club, left with those men, and returned to the club alone between one-half hour and an hour later. On 20 September 1977, Batters saw the defendants at the PlaMor Club and this time asked Sharon Mees to dance. Sharon declined the invitation to dance but said she would go outside for $100. Batters then sat down at a table with the two defendants and a discussion ensued. During the conversation, Batters told the defendants he was from Duluth, Minnesota, and was "into drugs and prostitution" and then discussed the possibility of him securing "clients" for the defendants. Batters and the defendants then left the PlaMor Club and went outside to the defendants' car where the conversation continued. Before leaving the car that evening, Batters

received the telephone number where he could reach Sharon Mees and a meeting for the three was arranged for the next evening at an establishment called the Dockside Lounge.

Batters went to the Dockside Lounge to meet the defendants the next evening, however, neither of the defendants appeared. After waiting approximately one hour, Batters called Sharon Mees. She informed him that she had made other arrangements and would not be able to meet him that evening, but agreed to meet Batters the following evening at the Dockside Lounge.

On 22 September 1977, Batters met the defendants at the Dockside Lounge where they discussed the type of client Batters would arrange for them. Batters informed them he had a man waiting for them at a local motel. The three drove to the motel in defendants' car and Batters took them to a room where Detective Norman Smith, another law enforcement official, was waiting. (Smith's identity as a law enforcement official was not disclosed.) Batters introduced Smith to the defendants. Batters requested and received the keys to defendants' car so he could meet a friend at another establishment, and said he would return to pick the defendants up in about an hour. He left.

Once inside the motel room, Sharon Mees informed Detective Smith that the defendants charged a fee of $100 each. After a discussion concerning what he, Smith, would receive for the fee, he gave each of the women five marked twenty-dollar bills. Smith then inquired what it would cost for defendants to perform a homosexual act, to which Sharon replied "an extra fifty dollars each." Smith accepted the offer and gave each of the women an additional fifty dollars in marked bills. The two defendants then undressed and agreed to pose for a photograph that Smith took. Laying on the bed, the defendants then began kissing and caressing each other. While the women were engaged in this activity, Smith moved to a nearby window in the room and nudged one of the curtains aside to let some light outside the room—a prearranged signal to members of the Mandan Police Department waiting outside the room.

On receiving this signal from Smith, the law enforcement officers outside the door entered the motel room. One of the officers, Detective Dennis Bullinger, placed the defendants under arrest, and advised them of their constitutional rights. The defendants then were allowed to get dressed, after which they and their possessions were searched, turning up $150 of marked bills from Sharon Mees' purse. The women were then taken to the Mandan Police Department where, after Detective Bullinger informed her that he was aware she had also received some money, LaDonna Mees removed from her shoe the $150 she had received from Smith.

Defendants were later released on bond and a formal complaint was filed by Detective Smith on 23 September 1977.

An omnibus hearing was conducted on defendants' case on 2 February 1978. At that hearing defendants presented a number of motions, including a motion to suppress physical evidence, confessions, and admissions obtained by the State as a result of an illegal arrest. The motion to suppress was denied at the hearing and defendants have not raised that denial on appeal. Defendants later filed a written motion to dismiss on grounds of unlawful arrest and again raised it orally at the trial of the defendants held on 2 March 1978, at which time the motion was dismissed. Defendants now raise that denial as one of the issues on appeal.

Defendants assert their arrests were made in violation of § 29–06–15, NDCC, which, in part, provides:

"A peace officer, without a warrant, may arrest a person:

1. For a public offense, committed or attempted in his presence; and for the purpose of this subsection a crime shall be deemed committed or attempted in his presence when what the officer observes through his senses reasonably indicates to him that a crime was in fact committed or attempted in his presence by the person arrested."

Defendants contend the alleged offense (misdemeanor) in this case was not committed in the presence of the arresting officer, Dennis Bullinger, because he was not in the room in which the acts the defendants are charged with were committed. Defendants assert that Bullinger, being outside the room, was unable to observe through his senses that a crime was in fact committed or attempted.

Defendants also argued that Detective Bullinger lacked probable cause to make the arrest, and as a result the arrests were invalid under the North Dakota and United States Constitutions. Defendants contend a good faith belief on the part of Bullinger, fostered by the prearranged signal from Smith, that the crime of prostitution was taking place in the motel room, did not constitute sufficient probable cause to justify the arrest without a warrant in this case.

■ The defendants apparently believed a motion to dismiss was the proper remedy for an unlawful arrest, and accordingly they made a motion to dismiss under Rule 12(b), North Dakota Rules of Criminal Procedure. That rule allows defendants to raise objections or defenses to defects in the institution of the prosecution, or defects in the indictment, information, or complaint through a motion to dismiss or through other motions to grant appropriate relief. Defendants' motion to dismiss in this case, however, was directed toward possible defects in their arrest and not toward defects in the institution of the prosecution, indictment, information, or complaint. The rule is well settled that an illegal arrest is not grounds for dismissing a complaint or precluding trial of a defendant. Nor will an illegal arrest void a subsequent conviction. *Gerstein v. Pugh*, 420 U.S. 103, 43 L.Ed.2d 54, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *State v. Hager*, 271 N.W.2d 476 (N.D.1978); 5 Am.Jur.2d, *Arrest*, § 116.

The motion to dismiss based upon an illegal arrest is properly directed toward a defendant's release from pretrial detention until a judicial determination of probable cause can be made, otherwise it must be directed toward defects in the prosecution. In this case, defendants did not seek a motion to dismiss to gain their release from pretrial detention, nor have the defendants challenged the institution of their prosecution.

■ In this case, the complaint was filed by Norman Smith the day following defendants' arrest setting forth the elements of the offense with which defendants were charged. The defendants have not challenged this complaint or any other procedural aspect that might serve as a defect in their prosecution. Consequently, we find defendants' motion to dismiss based upon an illegal arrest was properly denied.[1]

■ In addition to release from pretrial detention until a judicial determination of probable cause can be made, the usual sanction for an invalid arrest is that neither tangible items discovered in a search incident to such arrest, nor verbal statements of the accused obtained as a result of the arrest, are admissible in evidence. *State v. Erdman*, 170 N.W.2d 872 (N.D.1969); Wright, Federal Practice & Procedure: Criminal § 52, p. 37 (1969). The proper method of exercising this remedy is through a motion to suppress in accordance with Rule 12(b), NDRCrimP. Defendants made such a motion at their omnibus hearing, however, the trial court denied it. Because defendants have not presented the trial court's denial of their motion to suppress as an issue on appeal, we do not consider it.

As a second issue, defendants contend the trial court applied the wrong test in determining if they were entrapped in the com-

---

1. Because we hold defendants' motion to dismiss was not directed toward seeking their pretrial release, or based upon defects in their prosecution, and thus properly denied, we need not reach the issue of whether or not the arrests were illegal. We point out in passing, however, that there is a line of authority in this country holding that an arrest is proper when the offense is witnessed not by the arresting officer but by other officers (members of a team) who are with him so that the knowledge of one is implied to the knowledge of all. This is referred to as a team effort. *State v. Cook*, 194 Kan. 495, 399 P.2d 835 (1965).

mission of the offense for which they were charged. North Dakota's law on entrapment is found at § 12.1–05–11, NDCC. That section reads:

"1. It is an affirmative defense that the defendant was entrapped into committing the offense.

"2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency."

This Court, in the recent case of *State v. Pfister*, 264 N.W.2d 694 (N.D.1978), held that the North Dakota legislature adopted the so-called "objective theory" of entrapment in its enactment of § 12.1–05–11, NDCC. We note for the record that the trial court in this case made its ruling on defendants' entrapment defense prior to *Pfister*. Following final arguments by counsel in this case, the trial court said the predisposition of a person to commit an offense was the central issue when the defense of entrapment is raised. The trial court then found that the evidence indicated beyond any doubt that there was a predisposition on the part of the two defendants to commit the offense of prostitution. The court continued by stating that the defendants were not "innocent persons who committed an offense after being inveigled to do so by the police" and that the police officers simply afforded defendants an opportunity to engage in the act of prostitution. Defendants contend the trial court's use of the issue of predisposition as the central factor in reaching its decision was error.

We previously considered the proper test to be applied under our present entrapment statute, § 12.1–05–11, NDCC, in *State v. Pfister, supra*, where the defendant was

charged with delivery of a controlled substance. In *Pfister* the defense raised the issue of entrapment and requested a jury instruction based upon the statutory, so-called "objective," test. (The phrase "normal law-abiding person" for the term "objective," and the phrase or term "predisposition test" for the "subjective test" would be more descriptive than the terms "objective" and "subjective.") Although the trial court's instructions to the jury contained quotes from § 12.1–05–11, NDCC, it also instructed the jury that defendant's predisposition or willingness to commit the crime must be considered as an issue in the determination of entrapment.

We stated in *Pfister* that the language of subsections (1) and (2) of § 12.1–05–11, NDCC, is identical to the language of subsections (1) and (2) of § 702 of the proposed Federal Code. We found relevant the following explanation of the intent of the new statute, as taken from page 306 of the Working Papers of the National Commission on Reform of Federal Criminal Laws (1970):

"Entrapment is continued as a defense to a crime, but the question of the accused's predisposition is removed and the issue is framed rather in the objective terms of whether persons at large who would not otherwise have done so would have been encouraged by the government's actions to engage in crime. The focus of the proposed statute is on the activities of the government and their relation to the reasonable man."

We then proceeded to set forth the test to be used for determination of entrapment under § 12.1–05–11. That test is as follows:

"Pursuant to subsection 2 of § 12.1–05–11, N.D.C.C., entrapment occurs when a law enforcement agent induces the commission of a crime by means likely to cause 'normally law-abiding persons' to commit it. Under this statute, entrapment exists when two factors occur: (1) a law enforcement agent induces the commission of a crime; and (2) the method by which the law enforcement agent induces the commission of the crime is a method

'likely to cause normally law-abiding persons to commit the offense.' The defendant's predisposition to commit the crime is not included in the statutory definition of entrapment, and it is irrelevant to the entrapment issue."

We concluded in *Pfister* that the trial court had erroneously instructed the jury by making a question of defendant's predisposition an issue of the entrapment defense. We stated, at pages 698–699:

"Although the jury instruction given by the trial court quotes from the entrapment statute, § 12.1–05–11, N.D.C.C., it also instructs the jury on the subjective test of entrapment. The jury instruction erroneously makes the defendant's predisposition or willingness to commit the crime an issue of the entrapment defense. The jury instruction is misleading, and it relates to the defendant's primary defense in the case. Therefore, this erroneous jury instruction affected the substantial rights of the defendant and entitles him to a new trial."

In finding reversible error we relied heavily on two previous decisions of this court. Those cases held that when a jury instruction is incomplete or clouded by reference to former statutes and interpretations no longer in effect, and "it relates to a subject central to the case, and affects substantial rights of the accused, it is, in itself, grounds for reversal and remand for a new trial." *State v. Jensen*, 251 N.W.2d 182 (N.D.1977); *State v. Jacob*, 222 N.W.2d 586 (N.D.1974).

■ The fact that under the predisposition test the State was allowed to introduce prejudicial evidence concerning the defendants' past conduct was the primary reason for its replacement. Although such information may not have been relevant to the issue of defendants' guilt, it was relevant to the issue of predisposition and thus was allowed to be introduced for the jury's consideration. Under our new test the primary focus is on the conduct of law enforcement officials and the effect it would have on the normal law-abiding citizen. Because the issue of predisposition is irrelevant under this test, prejudicial evidence concerning defendants' background and past conduct to establish predisposition is not admissible.

In this case, unlike *Pfister*, we are dealing with a bench trial and not a jury trial. As a result, we are not faced, as we are in a jury trial, with the possibility that the fact finder might consider prejudicial evidence erroneously introduced on the issue of predisposition in the determination of actual guilt. The trial court's consideration of predisposition in deciding the issue of entrapment in this case would not have been reversible error in itself, if the trial court had made a determination of the entrapment issue based upon the rule set forth in *Pfister* in addition to its consideration of predisposition. If defendants, in determination of their guilt, had received the benefits of the two-part test as contained in *Pfister* on the issue of entrapment, the additional consideration of predisposition would have been considered harmless error.

■ Under the test in *Pfister*, entrapment occurs if both of the following conditions are met: (1) the law enforcement agent induces the commission of the crime; *and* (2) the method by which the law enforcement agent induces the commission of the crime is a method "likely to cause normal law-abiding persons to commit the offense." If the fact finder determines that either of these factors do not exist, there is no entrapment.

■ In this case the trial court made no determination of whether or not the conduct of the law enforcement officials is a method likely to cause normally law-abiding persons to commit the offense. The State argues, however, that the trial court, by stating in its decision that the law enforcement officers "simply afforded an opportunity for the defendants to engage in that act . . ." made a finding that the conduct of the officers did not induce commission of the crime. This finding, however, was made in connection with the predisposition of the defendants. The trial court in effect found that the law enforcement officers simply afforded the defendants an op-

portunity to commit a crime they were ready and willing to commit. Consequently, we cannot determine if the trial court simply found that the law enforcement officers did not induce the commission of the crime by their actions, or if it found that the law enforcement officers did not induce commission of the crime because the defendants were already willing to commit the offense. Whether or not defendants were ready and willing to commit the crime, or in other words were "predisposed," is an irrelevant and improper consideration in the determination of inducement under our new test of entrapment as set forth in *Pfister*. The question of whether or not defendants were induced to commit the crime by the actions of the police officers should be made independently of any consideration of defendants' predisposition. Accordingly, we conclude that the defendants are entitled to a new trial on the issue of entrapment to be decided under the statutory test set forth in our opinion in *State v. Pfister, supra.*

We now reach the issue of whether or not defendants were entitled to court-appointed counsel on appeal. Both defendants were represented by court-appointed counsel at all stages of the proceedings below. After sentencing and after filing the notice of appeal, Sharon Mees filed a motion for court-appointed counsel to represent her on appeal supported by an affidavit showing her to be indigent. That motion was denied on the grounds that no sentence of imprisonment was imposed and thus under Rule 44, NDRCrimP, she was not entitled to court-appointed counsel. Subsequently, LaDonna Mees filed a motion that she be allowed to appeal from her judgment in forma pauperis and that she be assigned court-appointed counsel to represent her on appeal supported by an affidavit showing her to be indigent. The county court found LaDonna indigent and granted her motion to proceed in forma pauperis however, it denied her motion for court-appointed counsel also on the ground that no sentence of imprisonment had been imposed. Rule 44, NDRCrimP, provides:

"Absent a knowing and intelligent waiver, every indigent defendant shall be entitled to have counsel appointed at public expense to represent him at every stage of the proceedings from his initial appearance before a magistrate through appeal in all felony cases. Absent a knowing and intelligent waiver, every indigent defendant shall be entitled to have counsel appointed at public expense to represent him at every stage of the proceedings from his initial appearance before a magistrate through appeal in all nonfelony cases <u>unless the magistrate has determined that sentence upon conviction will not include imprisonment.</u> The court shall appoint counsel to represent a defendant at his expense if he is unable to secure the assistance of counsel and is not indigent." [Underscoring ours.]

█ Defendants were charged with prostitution, which is a class B misdemeanor. Under Rule 44, NDRCrimP, defendants would not have been entitled to court-appointed counsel at trial if the trial court determined before trial that no sentence of imprisonment would be imposed. The purpose of this Rule is that no defendant suffer a loss of liberty as a result of a trial at which defendant was not represented by counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). As the comments to Rule 44, NDRCrimP, point out, however, the intent of the rule is also to not impose upon the counties the expense of court-appointed counsel for non-felony defendants when a magistrate has determined no imprisonment will be imposed as a result of a possible conviction. Thus the important consideration under Rule 44, NDRCrimP, is the type of punishment (imprisonment) the defendant will suffer as the result of a possible conviction and not the degree or type of crime, provided the charge is a non-felony.

█ We conclude the trial court in this case properly applied Rule 44, NDRCrimP, in denying defendants' motion for court-appointed counsel on appeal from the judgment of conviction because the sentence did not include a term of imprisonment.

Defendants argued other types of sentences can have consequences as serious or more serious than a loss of liberty as a result of imprisonment, and thus contended Rule 44, NDRCrimP, violates their Sixth Amendment right to counsel and urge us to overturn their convictions on that basis. The defendants also asserted the rule allows trial courts to effectively cut off a defendant's right to court-appointed counsel on a particular charge by simply determining that no sentence of imprisonment will be imposed. It is our view that Rule 44, NDRCrimP, as applied by the trial court, does not violate the Sixth Amendment to the United States Constitution. *Argersinger v. Hamlin, supra.*[2]

Defense counsel for Sharon Mees argued that denial of the motion for court-appointed counsel resulted in prejudice to the client through the difficulty incurred in securing a copy of the trial transcript. Counsel contended during oral argument that were it not for the transcript acquired by LaDonna Mees, he would have been forced to prepare this appeal without benefit of a transcript because financially assisting his client in acquiring such a transcript or paying any other costs of appeal would have been an ethical violation on his part.

■ LaDonna Mees acquired a copy of the trial transcript by filing a motion to appeal in forma pauperis. The record shows that Sharon Mees filed a motion for court-appointed counsel only; there is no indication that she either filed or was prevented from filing a motion to proceed in forma pauperis which would have allowed her to present her appeal without liability for costs.[3] Sharon cannot argue here that the county court denied her the right to a free transcript when she made no motion requesting such a transcript. We also observe the actions against the two defendants in this case were combined both at trial and on appeal. Only one set of briefs was filed by both defendants on appeal, and the issues appealed were the same for both defendants. We find no indication the defendants suffered any prejudice other than some possible inconvenience to counsel by having only one transcript available for preparation of their appeal.

Case remanded for a new trial with the determination of entrapment to be made under the test outlined by this Court in *State v. Pfister, supra.*

ERICKSTAD, C. J., and VandeWALLE and PAULSON, JJ., concur.

PEDERSON, Justice, dissenting in part.

I appreciate the distinction between objective and subjective tests and I agree with Justice Sand that it would be better if

**2.** We take note that the recently decided case of *People v. Scott*, 68 Ill.2d 269, 12 Ill.Dec. 174, 369 N.E.2d 881 (1977), is presently on appeal before the United States Supreme Court. Scott was charged with shoplifting merchandise valued under $150, which under Illinois law carried a possible sentence of up to $500 or one year in jail, or both. At no time during pretrial or trial proceedings was defendant advised of the right to have the assistance of counsel, or, if indigent, the right to have counsel appointed. Scott argued on appeal that all persons charged with a criminal offense which upon conviction carries the potential for imprisonment are constitutionally entitled, if indigent, to have counsel appointed, even though the conviction results in only the levying of a fine. The Illinois Supreme Court held there was no constitutional right to court-appointed counsel if there exists no possibility of incarceration if counsel is not properly waived. Under this ruling a defendant cannot be sentenced to a term of imprisonment if he was not allowed court-appointed counsel, and correspondingly if no term of imprisonment is to be or was imposed defendant has no constitutional right to court-appointed counsel. See also, *Empy v. State*, 571 S.W.2d 526 (Tex.Cr.App. 9/20/78); *Whorley v. Commonwealth*, 215 Va. 740, 214 S.E.2d 447 (1975); *Mahler v. Birnbaum*, 95 Idaho 14, 501 P.2d 282 (1972); *Nelson v. Tullos*, 323 So.2d 539 (Miss.1975); *Rollins v. State*, 299 So.2d 586 (Fla.1974); *Marston v. Oliver*, 485 F.2d 705 (4th Cir. 1973); *Morgan v. Juvenile and Domestic Relations Court, Halifax County, Virginia*, 491 F.2d 456 (4th Cir. 1974).

**3.** The record contains a copy of a receipt and acceptance, signed by the court reporter, of an order for the trial transcript apparently placed by counsel for Sharon Mees. Because Sharon Mees contends she never received an individual copy of the trial transcript we assume the order was canceled after her motion for court-appointed counsel was denied.

we would use more descriptive words when speaking or writing about entrapment. The conduct of the police in this case, in any event, should not be encouraged. Although I agree with most of the majority opinion, I do not agree that a new trial should be granted.

Here, as in *State v. Pfister*, 264 N.W.2d 694, 700 (N.D.1978), where I dissented, I see no likelihood that a retrial will change the result. That leads me to conclude that the error was harmless beyond a reasonable doubt. Rule 52(a), NDRCivP. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). An error of constitutional proportions is not involved in this case. If it were, the convictions should be set aside and the charges dismissed.

If the trial judge had used the precise, correct words from § 12.1–05–11(2), NDCC, and had not stated that the defendants were predisposed, the results would not have been different. A normal law-abiding person could not be persuaded by an offer of $150 to do what these defendants did. That is what the judge was saying. There is no reason to further demonstrate the harmlessness of the error.