**Lee J. TOPP, Plaintiff, Appellee,**

v.

**Thomas J. WOLKOWSKI and Thomas J. Lombardi, Defendants, Appellants.**

**No. 92–2468.**

United States Court of Appeals, First Circuit.

Heard May 6, 1993.

Decided June 3, 1993.

---

Claire L. Gregory, Asst. Atty. Gen., with whom Jeffrey R. Howard, Atty. Gen., and Robert E. Dunn, Jr., Asst. Com'r, New Hampshire Dept. of Safety, Concord, NH, were on brief for appellants.

Lynn D. Morse, Exeter, NH, for appellee.

Before BOUDIN, Circuit Judge, COFFIN and OAKES,* Senior Circuit Judges.

OAKES, Senior Circuit Judge.

New Hampshire State Troopers Thomas J. Lombardi and Thomas J. Wolkowski appeal from a judgment of the District Court for the District of New Hampshire, Dickran Tevrizian, *Judge*[1], denying their motion for summary judgment in this 42 U.S.C. § 1983 (1988) action brought by Lee J. Topp. Topp's complaint alleged that Lombardi and Wolkowski violated Topp's civil rights and committed a variety of common law torts against him when they arrested him for making an illegal lane change on an interstate highway. Neither Lombardi nor Wolkowski actually saw Topp make the lane change. They were radioed to pull over Topp's car by another state trooper, David Benoit, who did see the lane change.

The district court concluded that Lombardi and Wolkowski did not have qualified immunity to make an arrest on the basis of another officer's probable cause determination, since a New Hampshire statute bars troopers from making arrests for traffic violations not committed in their "presence." N.H.Rev. Stat.Ann. § 594:10 I(a) (1986). We conclude that the officers violated no clearly established federal or state standards in arresting Topp, particularly in light of state case law interpreting the "presence" requirement as permitting any member of a team of officers to make an arrest for an offense seen by another member of the team. Consequently, we reverse the denial of summary judgment.

## BACKGROUND

Topp filed this 42 U.S.C. § 1983 action after Lombardi and Wolkowski arrested him for making an illegal lane change on Inter-

---

* Of the Second Circuit, sitting by designation.

1. Judge Tevrizian, a District Judge of the Central District of California, was designated to sit in the District of New Hampshire.

state 95, southbound near Portsmouth. The officers were part of a detail; Officer Benoit, stationed one-quarter mile north of Lombardi, Wolkowski and two others, spotted traffic violators and signalled to the other officers which cars to pull over. At oral argument, the New Hampshire Assistant Attorney General candidly described this setup as a "speed trap."

According to the state troopers, Benoit saw Topp make a sudden lane change into the fastest of the four lanes, forcing another car in the fourth lane into the high-speed breakdown lane. Topp agrees that he made a sudden, unsignalled lane change, but says that he did so only as an emergency measure to avoid hitting a car that had braked suddenly in front of him. Topp also agrees that Benoit radioed to Lombardi to stop Topp's car. Lombardi did so, and Benoit, who had watched Topp's car as it travelled to Lombardi's position, signalled to Lombardi that he had stopped the right car.

Topp, however, refused to take the ticket without talking to the officer who had seen his lane change. Lombardi radioed Benoit for more details, and Benoit told him that Topp had made a sudden, unsignalled lane change, forcing another car into the high-speed breakdown lane and "nearly caus[ing] an accident." Topp agrees that Benoit conveyed this version of events to Lombardi, though he contends that this was not what happened, and that Benoit therefore could not have seen it happen. In any event, Lombardi told Topp that he could challenge the ticket in court, not on the highway, and that Officer Benoit would not come to speak with him directly.

In the face of Topp's alleged continuing refusal to take the ticket or to leave the scene,[2] Lombardi told Topp that if he did not take the ticket, he would be arrested, and then that he was under arrest. Seeing the commotion, Lombardi's superior officer, Sergeant Wolkowski, came up to the car. Lombardi explained that Topp would not take the ticket. After further arguments, Wolkowski also told Topp that he was under arrest. Topp then allegedly started his car and moved half a car length down the road. Wolkowski leaned in to the open convertible, turned the car off, opened the door, and, when Topp would not get out, pulled Topp from his car. Wolkowski allegedly directed Topp to the rear of his car, holding one of Topp's wrists high behind his back, and then pushed Topp's head onto the trunk of the car twice. Lombardi then handcuffed Topp. Topp was charged not only with the illegal lane change, but also with disorderly conduct and resisting arrest.

The charges were later dismissed: the disorderly conduct charge on the theory that the underlying statute had been found unconstitutional in a case involving protestors against the Seabrook Nuclear Power Plant; the other charges because the Portsmouth District Court found that the complaints had not been properly sworn.

Topp then filed this action, naming officers Lombardi and Wolkowski as defendants in both their individual and official capacities and charging due process and unspecified equal protection violations. The complaint also raised state common law claims of assault, false arrest, false imprisonment, and malicious prosecution.[3] Topp, who was represented by counsel, sought compensatory and punitive damages of $800,000 for psychological harm and resultant business losses. Topp alleged that officers Lombardi and Wolkowski had had no probable cause to arrest him, because they had not seen the lane change themselves and because the lane change was justified. The officers moved for summary judgment on all claims except the assault charge. The district court dismissed the claims against the officers in their official capacity, as barred by the Eleventh Amend-

---

2. The actions of both Topp and the officers after Topp's initial refusal to take the ticket are the subject of a factual dispute. We need not—and, indeed, may not—resolve this dispute. The significant fact for this interlocutory appeal is that Topp made, and was seen making, a sudden, unsignalled lane change. There is no dispute on this point.

3. The complaint did not, however, raise a claim of invasion of privacy from the officer's reaching into Topp's vehicle, nor could it. *Harbulak v. County of Suffolk*, 654 F.2d 194 (2d Cir.1981).

ment; dismissed the equal protection claim for failure to state a claim; and dismissed the claims of malicious prosecution on grounds of absolute prosecutorial immunity. The court denied summary judgment on the other claims on the theory that there was a dispute of fact as to whether the officers had probable cause to arrest, and that the officers did not have qualified immunity.

The officers then filed this interlocutory appeal of the ruling on qualified immunity.

## DISCUSSION

■ As a preliminary matter, we note that, although interlocutory, the appeal is proper. This court will hear interlocutory appeals of denials of motions for summary judgment on grounds of absolute or qualified immunity. *Floyd v. Farrell,* 765 F.2d 1, 2–3 (1st Cir.1985).

■ The only question before us is whether the motion for summary judgment on grounds of qualified immunity should have been granted. In general, the doctrine of qualified immunity provides that "government officials performing discretionary functions ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). In cases applying this standard to police arrests in this circuit, an arrest challenged as unsupported by probable cause is deemed " 'objectively reasonable' " unless "there *clearly* was no probable cause at the time the arrest was made." *Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir.1985).

■ The undisputed facts demonstrate that Lombardi and Wolkowski could easily have believed that they had probable cause to believe Topp had committed a traffic violation. Topp agrees that the arresting officers acted on the basis of Officer Benoit's statement that he had just seen Topp force another car off the road in the course of making a sudden, unsignalled lane change. Topp concedes that he made the lane change without signalling. All agree that Benoit described Topp's white Chrysler convertible to Lombardi and confirmed that Lombardi had stopped the right car.

The crux of Topp's case is his contention that Officers Lombardi and Wolkowski had no authority to arrest him because they did not themselves see him make the allegedly illegal lane change. Topp claims that, under New Hampshire law, probable cause to believe he had made an improper lane change is not enough. In New Hampshire, he says, an officer cannot make a warrantless arrest for a violation, such as an improper lane change, unless the officer "has probable cause to believe that the person to be arrested has committed a ... violation in his presence." N.H.Rev.Stat.Ann. § 594:10. Thus, Topp claims that the troopers violated New Hampshire's "presence" requirement, and that this violation raises a federal civil rights claim as well.

■ However, New Hampshire case law interpreting this provision quite strongly suggests that where one member of a law enforcement team has seen the violation, any member of the team can make the arrest. *State v. Standish,* 116 N.H. 483, 363 A.2d 404 (1976) (driving under the influence; vehicle was inoperable by time arresting officer arrived), *citing State v. Cook,* 194 Kan. 495, 399 P.2d 835 (1965) (arresting officer received information from airplane tracking highway speeds). Topp attempts to distinguish *Standish,* since the arresting officer in that case arguably had independent probable cause to believe that the offense had occurred (Standish was drunk, in his car, and crashed against a tree, enough to suggest to the arresting officer that he had driven the car into the tree). However, the language of the case is more sweeping than that. The *Standish* court justified its result not by arguing that the arresting officer had independent probable cause to arrest, but by relying on the concept of team arrests and on

case law in other states, including the *Cook* case. These cases interpret similar statutes setting forth "presence" requirements for misdemeanor arrests as permitting arrests to be made by any member of a team of officers so long as one of the officers was "present."

Furthermore, the officers in this case were using routine procedures. It cannot have been clear to them, in light of established practice and the supportive case law, that the procedure of using one officer to spot violators and others to effect the actual arrests, with confirmation that the correct vehicle was stopped, was inconsistent with the statute. Thus, even assuming that § 1983 requires officers to comply with the requirements of a state statute defining probable cause more narrowly than the federal Constitution requires, the standard is met because the officers were not clearly wrong in believing that they were acting properly. In light of case law and established practice, their interpretation of the "presence" requirement of the New Hampshire misdemeanor arrest statute was reasonable.

### CONCLUSION

Accordingly, we reverse the judgment of the district court, insofar as it denied the officers' motion for summary judgment on grounds of qualified immunity.