June 16, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-2468

 LEE J. TOPP,

 Plaintiff, Appellee,

 v.

 THOMAS J. WOLKOWSKI 
 and THOMAS J. LOMBARDI,

 Defendants, Appellants.
 

 ERRATA SHEET

Please make the following corrections in the opinion in the above
case released on June 3, 1993:

Page 4, line 2: delete all extra spaces.

Page 5, line 17: insert the word "charge" following the word
"conduct".

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-2468

 LEE J. TOPP,

 Plaintiff, Appellee,

 v.

 THOMAS J. WOLKOWSKI 
 and THOMAS J. LOMBARDI,

 Defendants, Appellants.

 

 APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Dickran M. Tevrizian,* U.S. District Judge]
 

 

 Before

 Boudin, Circuit Judge,
 
 Coffin and Oakes,** Senior Circuit Judges.
 
 

Claire L. Gregory, Assistant Attorney General, with whom Jeffrey
 
R. Howard, Attorney General, and Robert E. Dunn, Jr., Assistant
 
Commissioner, New Hampshire Department of Safety, were on brief for
appellants.
Lynn D. Morse for appellee.
 

 

 June 3, 1993
 

 

* Of the District of Central California, sitting by designation.
**Of the Second Circuit, sitting by designation.

 OAKES, Senior Circuit Judge. New Hampshire State
 

Troopers Thomas J. Lombardi and Thomas J. Wolkowski appeal

from a judgment of the District Court for the District of

New Hampshire, Dickran Tevrizian, Judge1, denying their
 

motion for summary judgment in this 42 U.S.C. 1983 (1988)

action brought by Lee J. Topp. Topp's complaint alleged

that Lombardi and Wolkowski violated Topp's civil rights and

committed a variety of common law torts against him when

they arrested him for making an illegal lane change on an

interstate highway. Neither Lombardi nor Wolkowski actually

saw Topp make the lane change. They were radioed to pull

over Topp's car by another state trooper, David Benoit, who

did see the lane change. 

 The district court concluded that Lombardi and

Wolkowski did not have qualified immunity to make an arrest

on the basis of another officer's probable cause

determination, since a New Hampshire statute bars troopers

from making arrests for traffic violations not committed in

their "presence." N.H. Rev. Stat. Ann. 594:10 I(a)

(1986). We conclude that the officers violated no clearly

established federal or state standards in arresting Topp,

 

1Judge Tevrizian, a District Judge of the Central District
of California, was designated to sit in the District of New
Hampshire.

 -2-
 2

particularly in light of state case law interpreting the

"presence" requirement as permitting any member of a team of

officers to make an arrest for an offense seen by another

member of the team. Consequently, we reverse the denial of

summary judgment.

 BACKGROUND 
 

 Topp filed this 42 U.S.C. 1983 action after

Lombardi and Wolkowski arrested him for making an illegal

lane change on Interstate 95, southbound near Portsmouth.

The officers were part of a detail; Officer Benoit,

stationed one-quarter mile north of Lombardi, Wolkowski and

two others, spotted traffic violators and signalled to the

other officers which cars to pull over. At oral argument,

the New Hampshire Assistant Attorney General candidly

described this setup as a "speed trap." 

 According to the state troopers, Benoit saw Topp

make a sudden lane change into the fastest of the four

lanes, forcing another car in the fourth lane into the high-

speed breakdown lane. Topp agrees that he made a sudden,

unsignalled lane change, but says that he did so only as an

emergency measure to avoid hitting a car that had braked

 -3-
 3

suddenly in front of him. Topp also agrees that Benoit

radioed to Lombardi to stop Topp's car. Lombardi did so,

and Benoit, who had watched Topp's car as it travelled to

Lombardi's position, signalled to Lombardi that he had

stopped the right car. 

 Topp, however, refused to take the ticket without

talking to the officer who had seen his lane change.

Lombardi radioed Benoit for more details, and Benoit told

him that Topp had made a sudden, unsignalled lane change,

forcing another car into the high-speed breakdown lane and

"nearly caus[ing] an accident." Topp agrees that Benoit

conveyed this version of events to Lombardi, though he

contends that this was not what happened, and that Benoit

therefore could not have seen it happen. In any event,

Lombardi told Topp that he could challenge the ticket in

court, not on the highway, and that Officer Benoit would not

come to speak with him directly. 

 In the face of Topp's alleged continuing refusal

to take the ticket or to leave the scene,2 Lombardi told

 

2The actions of both Topp and the officers after Topp's
initial refusal to take the ticket are the subject of a
factual dispute. We need not -- and, indeed, may not --
resolve this dispute. The significant fact for this
interlocutory appeal is that Topp made, and was seen making,
a sudden, unsignalled lane change. There is no dispute on
this point.

 -4-
 4

Topp that if he did not take the ticket, he would be

arrested, and then that he was under arrest. Seeing the

commotion, Lombardi's superior officer, Sergeant Wolkowski,

came up to the car. Lombardi explained that Topp would not

take the ticket. After further arguments, Wolkowski also

told Topp that he was under arrest. Topp then allegedly

started his car and moved half a car length down the road.

Wolkowski leaned in to the open convertible, turned the car

off, opened the door, and, when Topp would not get out,

pulled Topp from his car. Wolkowski allegedly directed Topp

to the rear of his car, holding one of Topp's wrists high

behind his back, and then pushed Topp's head onto the trunk

of the car twice. Lombardi then handcuffed Topp. Topp was

charged not only with the illegal lane change, but also with

disorderly conduct and resisting arrest. 

 The charges were later dismissed: the disorderly

conduct on the theory that the underlying statute had been

found unconstitutional in a case involving protestors

against the Seabrook Nuclear Power Plant; the other charges

because the Portsmouth District Court found that the

complaints had not been properly sworn. 

 Topp then filed this action, naming officers

Lombardi and Wolkowski as defendants in both their

 -5-
 5

individual and official capacities and charging due process

and unspecified equal protection violations. The complaint

also raised state common law claims of assault, false

arrest, false imprisonment, and malicious prosecution.3

Topp, who was represented by counsel, sought compensatory

and punitive damages of $800,000 for psychological harm and

resultant business losses. Topp alleged that officers

Lombardi and Wolkowski had had no probable cause to arrest

him, because they had not seen the lane change themselves

and because the lane change was justified. The officers

moved for summary judgment on all claims except the assault

conduct. The district court dismissed the claims against

the officers in their official capacity, as barred by the

Eleventh Amendment; dismissed the equal protection claim for

failure to state a claim; and dismissed the claims of

malicious prosecution on grounds of absolute prosecutorial

immunity. The court denied summary judgment on the other

claims on the theory that there was a dispute of fact as to

whether the officers had probable cause to arrest, and that

the officers did not have qualified immunity.

 

3The complaint did not, however, raise a claim of invasion
of privacy from the officer's reaching into Topp's vehicle,
nor could it. Harbulak v. County of Suffolk, 654 F.2d 194
 
(2d Cir. 1981). 

 -6-
 6

 The officers then filed this interlocutory appeal

of the ruling on qualified immunity. 

 DISCUSSION
 

 As a preliminary matter, we note that, although

interlocutory, the appeal is proper. This court will hear

interlocutory appeals of denials of motions for summary

judgment on grounds of absolute or qualified immunity.

Floyd v. Farrell, 765 F.2d 1, 2-3 (1st Cir. 1985). 
 

 The only question before us is whether the motion

for summary judgment on grounds of qualified immunity should

have been granted. In general, the doctrine of qualified

immunity provides that "government officials performing

discretionary functions . . . are shielded from liability

for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of

which a reasonable person would have known." Harlow v.
 

Fitzgerald, 457 U.S. 800, 818 (1982). See also Anderson v.
 

Creighton, 483 U.S. 635, 640 (1987) ("The contours of the
 

right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that

right."); Malley v. Briggs, 475 U.S. 335, 341 (1986)
 

 -7-
 7

(qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law"). In

cases applying this standard to police arrests in this

circuit, an arrest challenged as unsupported by probable

cause is deemed "'objectively reasonable'" unless "there

clearly was no probable cause at the time the arrest was
 

made." Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985). 
 

 The undisputed facts demonstrate that Lombardi and

Wolkowski could easily have believed that they had probable

cause to believe Topp had committed a traffic violation.

Topp agrees that the arresting officers acted on the basis

of Officer Benoit's statement that he had just seen Topp

force another car off the road in the course of making a

sudden, unsignalled lane change. Topp concedes that he made

the lane change without signalling. All agree that Benoit

described Topp's white Chrysler convertible to Lombardi and

confirmed that Lombardi had stopped the right car. 

 The crux of Topp's case is his contention that

Officers Lombardi and Wolkowski had no authority to arrest

him because they did not themselves see him make the

allegedly illegal lane change. Topp claims that, under New

Hampshire law, probable cause to believe he had made an

improper lane change is not enough. In New Hampshire, he

 -8-
 8

says, an officer cannot make a warrantless arrest for a

violation, such as an improper lane change, unless the

officer "has probable cause to believe that the person to be

arrested has committed a . . . violation in his presence."

N.H. Rev. Stat. Ann. 594:10. Thus, Topp claims that the

troopers violated New Hampshire's "presence" requirement,

and that this violation raises a federal civil rights claim

as well. 

 However, New Hampshire case law interpreting this

provision quite strongly suggests that where one member of a

law enforcement team has seen the violation, any member of

the team can make the arrest. State v. Standish, 116 N.H.
 

483, 363 A.2d 404 (1976) (driving under the influence;

vehicle was inoperable by time arresting officer arrived),

citing State v. Cook, 399 P.2d 835 (Kan. 1965) (arresting
 

officer received information from airplane tracking highway

speeds). Topp attempts to distinguish Standish, since the
 

arresting officer in that case arguably had independent

probable cause to believe that the offense had occurred

(Standish was drunk, in his car, and crashed against a tree,

enough to suggest to the arresting officer that he had

driven the car into the tree). However, the language of the

case is more sweeping than that. The Standish court
 

 -9-
 9

justified its result not by arguing that the arresting

officer had independent probable cause to arrest, but by

relying on the concept of team arrests and on case law in

other states, including the Cook case. These cases
 

interpret similar statutes setting forth "presence"

requirements for misdemeanor arrests as permitting arrests

to be made by any member of a team of officers so long as

one of the officers was "present." 

 Furthermore, the officers in this case were using

routine procedures. It cannot have been clear to them, in

light of established practice and the supportive case law,

that the procedure of using one officer to spot violators

and others to effect the actual arrests, with confirmation

that the correct vehicle was stopped, was inconsistent with

the statute. Thus, even assuming that 1983 requires

officers to comply with the requirements of a state statute

defining probable cause more narrowly than the federal

Constitution requires, the standard is met because the

officers were not clearly wrong in believing that they were

acting properly. In light of case law and established

practice, their interpretation of the "presence" requirement

of the New Hampshire misdemeanor arrest statute was

reasonable.

 -10-
 10

 CONCLUSION
 

 Accordingly, we reverse the judgment of the

district court, insofar as it denied the officers' motion

for summary judgment on grounds of qualified immunity. 

 -11-
 11